F. P. ESKEW *v.* THE BUCKHANNON BANK

(CC 505)

Submitted November 14, 1934. Decided November 27, 1934.

580

*Linn Mapel Brannon* and *E. A. Brannon,* for plaintiff. *Young & McWhorter, Homer A. Holt,* Attorney General, and *Ira J. Partlow,* Assistant Attorney General, for defendant.

KENNA, JUDGE:

This action in assumpsit was brought in the circuit court of Upshur County by F. P. Eskew against the Buckhannon Bank to recover $1,000.00 alleged to be due under a time certificate of deposit issued by the bank to the plaintiff on June 23, 1931. The sufficiency on demurrer of three special pleas by way of confession and avoidance filed by the bank is certified to this court.

Plea No. 2 alleges that on the 15th day of October, 1931, because of heavy withdrawals of deposits, the bank was closed by order of the board of directors, and the banking commissioner of the State of West Virginia took control by and with the consent of the Governor, and appointed C. E. Lawhead receiver for the bank; that after funds amounting to $25,000.00 had been provided by the stockholders of the bank and made a part of its assets,

and after all but about five per cent of its depositors had signed written agreements foregoing their right to demand payment of their deposits for a period of from one to five years, which agreement the plaintiff refused to sign with the purpose of forcing the payment of his deposit in full, on the 27th day of April, 1932, the commissioner of banking ordered the partial restoration to the defendant of its assets and property, and authorized it to open its doors and resume its banking business subject to certain conditions, restrictions and limitations prescribed by the banking commissioner. The limitations prescribed by the banking commissioner are set up in full in the plea. They are: that the bank shall keep an accurate record of its re-claimed assets and of the amount realized therefrom during the period covered by the bank's contracts deferring the withdrawals of its depositors; that it shall report each three months to C. E. Lawhead, the receiver, the cash so realized; that from that amount, preferred deposits shall be paid and that five per cent of the remainder of the cash so realized shall be paid to the receiver to be held and administered by him for the benefit of those depositors who have refused to sign the agreement freezing their deposits, that the amount paid to the receiver is to be paid out by him in the manner prescribed by law for the administration and distribution of funds by receivers of banks appointed by the banking commissioner, the powers of the receiver being limited to the funds so received by him. The plea goes on to allege that since the re-opening of the bank under the agreement with the banking commissioner, and subject to the limitations and regulations prescribed by him, that the plaintiff is required to look solely to the receiver and cannot recover from the defendant bank; that at no time during the negotiations which culminated in the agreement under which the bank was re-opened, did the plaintiff protest or object, but that all during the time of such negotiations and up until the time of his bringing this suit he acquiesced and approved; that he at no time moved for revision or modification of the banking commissioner's order and that for more than a year prior to

the bringing of this suit, the bank continued to carry on its business in accordance with the regulations of the banking commissioner when it was re-opened, paying out its funds and meeting its obligations in accordance therewith, by reason of all of which the plaintiff has waived such rights as he may have had as against the bank and is estopped from now making any objection or from recovering in this suit.

Special plea No. 3, omitting the allegations of estoppel, otherwise avers the same matter as special plea No. 2, adding thereto an averment of the act of the legislature on March 1, 1933, amplifying the powers of the banking commissioner and further averring an order of the banking commissioner of March 4, 1933, entered by and with the approval and consent of the Governor, as follows: "Now, therefore, be it ordered that all deposits in the said Buckhannon Bank as of April 29, 1932, unsigned in the said reorganization of the said Buckhannon Bank, West Virginia, shall remain, and no withdrawals shall be permitted therefrom except in conformity with the provisions of the depositors' agreement whereby the said Buckhannon Bank reorganized and re-claimed its deposits." The plea alleges that this order was duly and properly promulgated under the act of the legislature prior to the institution of this action, and that it has remained in full force and effect ever since that date and still remains in full force and effect by reason whereof the plaintiff should not be permitted to maintain this action.

Special plea No. 4 avers that on the _____day of February, 1933, before the institution of this action, the Governor of West Virginia, by virtue of authority vested in him under the constitution and laws of the state, because of a grave emergency in the banking, financial and economic situation in the state, declared a moratorium as to all state banks, including the defendant, closing such banks and suspending all rights of depositors and other creditors, and full payment upon any claims against the bank; that on the 6th day of March, 1933, the President of the United States, because of an emergency

throughout the country, closed all national banks, and that thereupon, the Governor of West Virginia issued his proclamation closing all state banks on the same day; that they remained closed for a period of about two weeks; that on the 15th day of March, 1933, by virtue of an act of the legislature that authorized the banking commissioner to re-open the state banks under such limitations and regulations as he might prescribe, with the consent and approval of the Governor, the banking commissioner did order the defendant bank to be re-opened upon the conditions and subject to the limitations and regulations set forth in the previous order entered by the said banking commissioner on the 4th day of March, 1933, setting forth that order in the same language as it is set forth in special plea No. 3. The plea goes on to allege that re-opening of the bank under the order of the banking commissioner with the consent and approval of the Governor was done before the institution of this action, and that the order of the banking commissioner, therein referred to, has remained in full force and effect ever since its date, and that by reason thereof, the plaintiff is not entitled to bring and maintain this action.

The trial chancellor sustained a demurrer in writing to plea No. 2, and overruled demurrers in writing to pleas Nos. 3 and 4. It is upon these rulings that we are asked to pass.

The demurrer to plea No. 2 raises three questions: (1) that there is no authority in the commissioner of banking under the statute to authorize a bank that has been closed by him on account of its insolvency to re-claim its assets and to resume its banking business subject to conditions, restrictions and limitations to be imposed by the commissioner of banking, hence that the order is invalid in so far as it seeks to impose conditions and does not affect the plaintiff's claim against the bank which stands as it would stand if the bank were doing business free from any limitations imposed by the commissioner of banking; (2) that since the powers of the commissioner of banking cannot be delegated but must be exercised by himself individually, the appointment of C. E.

Lawhead as receiver for the unpledged accounts of the bank is invalid; and (3) that, there being no duty upon the plaintiff to protest against the conduct of the commissioner of banking beyond declining to sign the freezing agreement along with the other depositors, which he did, that his conduct cannot amount to an estoppel. It will be seen that this plea is duplicitous inasmuch as it relies upon the order of the commissioner of banking under date of April 27, 1932, and pleads that order in direct bar of the plaintiff's claim, and, furthermore, relies upon the conduct of the plaintiff as constituting an estoppel on the evident assumption that but for the estoppel his claim would not be barred. However, since the question of duplicity is not the question certified, we do not pass upon it.

The demurrer to plea No. 3 raises the same questions as does the demurrer to plea No. 2, and, in addition, takes the position that the act of the legislature passed on the first day of March, 1933, upon which was based the order of the commissioner of banking, dated March 4, 1933, is unconstitutional, and the order invalid because the act goes beyond its title; that it embraces more than one object not germane and that, whereas, the act in its title purports to be amendatory of article 4 of chapter 31 of the Code adding section 6-a thereto, the article named in the title is not the article of the Code that deals with the powers of the banking *commissioner* since article 4 deals with banking *institutions,* and it is article 8 of chapter 31 that deals with the powers of the banking commissioner, and that, therefore, the title to the act is misleading.

The demurrer to plea No. 4 reiterates the position that the Act of the legislature of March 1, 1933, contained in chapter 12, page 44 of the Acts of that session, is unconstitutional and invalid; that the order of the commissioner of banking, dated March 4, 1933, is made without authority of law, and is invalid; that the said order of the banking commissioner impairs the obligation of plaintiff's contract and is the taking of private property without due process of law.

It appears from this record that up to the date of the action of the banking commissioner in closing the bank on account of its insolvency, the plaintiff had made no demand for the amount of his time certificate of deposit. Certainly, during the period of insolvency, the plaintiff's rights as against the bank in its insolvent condition were no better than those of the other creditors in his class. In permitting the bank to re-open under what was tantamount to a reorganization, the banking commissioner imposed certain limitations and restrictions with reference to the handling of its assets that had been subject to the claims of its creditors at the time of the insolvency. He also exacted of the stockholders of the bank a contribution of $25,000.00 new money to its capital. Obviously, the bank emerged from the direct control of the banking commissioner at least $25,000.00 in cash better off than it was when it was declared insolvent, and further fortified by the agreement freezing the deposits of 95 per cent of its depositors at the time of insolvency. This makes it appear that the plaintiff is attempting to assert his claim in full as against assets not only greater in amount than those he would have had the right to look to at the time of insolvency, but rendered far more liquid by the agreement freezing the bank's depositor liabilities. In bringing about this improved condition of the bank, the plaintiff had no part whatsoever.

Not only is this true, but it is likewise true that under the conditions prescribed by the banking commissioner, this plaintiff's rights as they were at the time the bank was declared insolvent (and apparently he had asserted no right to have his deposit returned to him prior to that time) have not been in the least impaired. The conditions prescribed that the directors of the bank shall proceed to realize upon all of its re-claimed assets, that the fund so realized shall be kept intact and shall be used to pay off preferred depositors and other creditors in substantially the manner that their claims would have been paid upon liquidation of the bank.

But the plaintiff says that his depositor contract with the bank has been impaired by legislation subsequently

enacted that has vastly extended the scope of the banking commissioner's authority as it existed at the time of his deposit, that the banking commissioner had no such powers at the time that his deposit was made, and consequently that the exercise of powers subsequently conferred upon him cannot affect the status of his deposit. He says, too, that the acts in question are unconstitutional. As a basis of unconstitutionality, he says, first, that the constitution of the state is not broad enough to warrant the legislation, and, second, that the title of the act conferring these powers upon the banking commissioner relates only to the powers of boards of directors of banks, whereas the powers of the banking commissioner are conferred by another act, the caption of which relates to his own powers.

In the case of *Timmons* v. *Peoples Trust Company*, 114 W. Va. 618, 173 S. E. 79, this court had before it a case in which a bank had been permitted to operate under what is there termed a reorganization that imposed a condition that sixty-six and two thirds per cent of the depositors of the bank would consent to the freezing of their deposits over a period of years. As a matter of fact, 85 per cent of the depositors in that case had consented to the freezing of their deposits. We have an even larger percentage consenting in this case. In the *Timmons* case, the court undoubtedly took the view that the stipulations and conditions imposed by the banking commissioner under which the bank was to operate when it continued its business, were binding as within the powers of the banking commissioner under 31-8-29, Code. It is perfectly obvious that if the banking commissioner had the power to impose conditions governing the operations of a reorganized bank under his powers to permit reorganization under the old act, that we are not concerned with the subsequent amendments to the banking act and need not look to them for justification.

But, in the *Timmons* case, the court went further and expressly held that a depositor who did not consent to a freezing agreement made during a period of insolvency and while the bank was in charge of the banking commis-

sioner, for the purpose of permitting the bank to re-open under a reorganization, was bound by its fair and reasonable terms nevertheless, the opinion expressly stating that under such conditions, "Where a common fund is involved, courts will not usually permit a small minority of those interested to defeat the wishes of an overwhelming majority of their associates." It would appear, therefore, that the questions raised by the pleas in the case before us have already been fully answered. In the first place, the banking commissioner was vested under the original banking act, Code. of 1931, 31-8-29, with the powers that he seeks to exercise. in this case to impose regulations upon banks permitted to open under reorganizations sanctioned by the banking act. These regulations, unless arbitrary, unjust or fraudulent, are binding alike upon the stockholders, creditors and depositors of the bank. In addition, an agreement, made during the insolvency of the bank and while the claim of a depositor is subject to communal treatment, in which an overwhelming number of the depositors of the bank join is binding upon all depositors.

One further matter must be commented upon. Counsel for plaintiff urge that the amendatory acts are unconstitutional because section 6 of Article XI of the Constitution is not broad enough to authorize the legislature to enact them. The same reasoning would apply to the provisions of the Code of 1931. But our Constitution is not a grant of powers to the legislature and the legislature is supreme unless restricted by the Constitution. The fruit of this principle is so apparent in our law that it is not. necessary to go to its root by the citation of precedent.

On this basis of the above observations, it is apparent that the ruling of the trial court in sustaining the demurrer to plea No. 2 will have to be reversed, and the ruling in overruling the demurrer to pleas Nos. 3 and 4 will have to be affirmed.

Upon the basis of decision herein contained, it is unnecessary for us to pass upon the constitutionality of the Acts of the Legislature, Regular Session of 1933, chap-

588

ters 11 and 12, raised by counsel for the plaintiff and consequently we do not discuss those questions.

*Affirmed in part; reversed in part; remanded.*