STATE OF WEST VIRGINIA *ex rel.* JOHN G. FOX,

*Attorney General, Etc.*

*v.*

RAYMOND BREWSTER

(No. 10665)

Submitted September 7, 1954.   Decided October 12, 1954

236

Lovins, Judge, concurring.

*John G. Fox, Attorney General, Arden J. Curry, Assistant Attorney General,* for plaintiff in error.

*Estep, Chambers & Smith,* amicus curiae for the Senate of the State of West Virginia—*Vincent V. Chaney,* for defendant in error.

Riley, Judge:

The Attorney General of West Virginia, Honorable John G. Fox, filed in the Circuit Court of Kanawha County a petition praying for leave to file an information in the nature of a writ of *quo warranto* against the respondent, Raymond Brewster, praying that due process of law be awarded in the name of the State of West Virginia against Raymond Brewster, returnable to the next term of the circuit court to cause him to answer the information and disclose to the circuit court by what warrant, right or lawful authority he has intruded upon and usurped the public office of member of the West Virginia Board of Education from the Fourth Congressional District of West Virginia, for the unexpired term ending on June 30, 1961, and that the respondent be ousted and expelled by the judgment of the circuit court from such office for the unexpired term thereof. To the petition the respondent filed an answer, to which answer the petitioner filed a replication, and the respondent filed a rejoiner to the replication. To the final order of the Circuit Court of Kanawha County, entered on March 1, 1954, finding that no vacancy existed in the office of member of the West Virginia Board of Education, on June 30, 1952, upon the expiration of the five-year term for which the respondent Brewster had been lawfully appointed and had served as a *de jure* officer, adjudicating that the respondent has shown that he has a lawful right and title to the office of member of the West Virginia Board of Education for the term expiring on June 30, 1961, and refusing the

judgment of ouster prayed for by the relator, this writ of error is prosecuted.

The proceeding was tried in the Circuit Court of Kanawha County upon the written stipulation of facts agreed to and entered into by Arden J. Curry, Assistant Attorney General of West Virginia and counsel for petitioner, and F. Paul Chambers, of counsel for the respondent, Raymond Brewster.

The office in controversy of member of the West Virginia Board of Education was established by Code, 18-2-1, as amended and reenacted by Section 1, Article 2, Chapter 72, Acts of the Legislature, Regular Session, 1947, and is a public office within the meaning and intent of Code, 53-2-4, as amended. The stipulation provides, and we so hold, that such office is not created by the Constitution of the State of West Virginia, and that in prescribing the terms of office, powers, duties and compensation of members of the West Virginia Board of Education, and the manner in which the members shall be appointed, the Legislature acted pursuant to the authority granted to it by the West Virginia Constitution, Article IV, Section 8, which provides that: "The Legislature, in cases not provided for in this Constitution, shall prescribe, by general laws, the terms of office, powers, duties and compensation of all public officers and agents, and the manner in which they shall be elected, appointed and removed."

Code, 18-2-1, as amended and reenacted by Section 1, Article 2, Chapter 72, Acts of the Legislature, Regular Session, 1947, establishing the State Board of Education as a corporation to be known and designated as the West Virginia Board of Education, provides in Section 1 of Article 2 of Chapter 72, Acts of the Legislature, Regular Session, 1947, that:

"There shall be a state board of education, to be known as the West Virginia board of education, which shall be a corporation and as such may contract and be contracted with, plead and be impleaded, sue and be sued, and have and use a common seal. The state board shall consist of

ten members, of whom one shall be the state superintendent of schools, ex officio, who shall not be entitled to vote. The other nine members shall be citizens of the state, appointed by the governor, by and with the advice and consent of the Senate, for overlapping terms of nine years, except that the original appointments shall be for terms of one, two, three, four, five, six, seven, eight and nine years, respectively. At least one but not more than two members shall be appointed from each congressional district, and at least one member shall be of the Negro race.

\* \* \*

"The governor shall appoint all members of the state board as soon after the effective date hereof as is practicable for respective terms of office beginning on the first day of July, one thousand nine hundred forty-seven. Any vacancy on the board shall be filled by the governor by appointment for the unexpired term. The terms of office of present members of the state board shall expire on the thirtieth day of June, one thousand nine hundred forty-seven.

"No member of the state board may be removed from office by the governor except for official misconduct, incompetence, neglect of duty, or gross immorality and then only in the manner prescribed by law for the removal by the governor of state elective officers."

The stipulation states that at all times pertinent to the decision of this case, the respondent, Raymond Brewster, was eligible for appointment as a member of the West Virginia Board of Education; and, as the case was presented to the circuit court and tried on the basis of the factual situation portrayed by the stipulation of counsel, it becomes necessary in the decision of this case to set forth the pertinent facts contained in counsel's stipulation.

On July 1, 1947, when the Legislature was in recess, the Governor of this State, Honorable Clarence W. Meadows, pursuant to Code, 18-2-1, as amended and reenacted by Section 1, Article 2, Chapter 72, Acts of the Legislature, Regular Session, 1947, "appointed" the respondent,

Raymond Brewster, to the "public office" of member of the West Virginia Board of Education for the five-year term ending on June 30, 1952, by a letter of appointment directed by the then Governor to the Secretary of State of West Virginia, with a copy thereof to the Clerk of the State Senate. Pursuant to this letter a commission of appointment was issued to the respondent, in accordance with Code, 6-4-3, which appointment was accepted by the respondent, who qualified by taking the requisite oath, and respondent received such office in the manner provided by law. The letter of Governor Meadows, dated July 1, 1947, addressed to the Honorable William S. O'Brien, then Secretary of State, a copy of which was mailed or delivered to the Clerk of the State Senate, reads:

> "As Governor of the State of West Virginia, I have today appointed Raymond Brewster of Huntington, Cabell County, (4th Congressional District), a member of the West Virginia Board of Education, for the term ending June 30, 1952.
>
> "Please issue commission accordingly."

The next session of the State Senate, after the appointment of the respondent, Raymond Brewster, by Governor Meadows was legally organized and convened on January 12, 1949, as provided by the Constitution of West Virginia, Article VI, Section 18.

Though the term of office of Clarence W. Meadows, as Governor of the State of West Virginia, expired on January 18, 1949, Governor Meadows did not at any time during his term of office submit the name of the respondent, Raymond Brewster, to the State Senate "for nomination" to the office of member of the West Virginia Board of Education for the five-year term ending June 30, 1952, "unless all or a part of the facts stipulated in numbered paragraph (4) [of the stipulation] had such legal effect;" and the stipulation specifically provides that the petitioner does not agree or admit that the facts stipulated in numbered paragraph (4) of the stipulation had such legal effect, and the respondent does not agree or admit

that it was necessary for Governor Meadows to submit the name of the respondent to the State Senate, in order for the Senate to properly consider and consent to the appointment. Paragraph (4) of the stipulation pro-vides:

"That, as required by Section 1 of Article 2 of Chapter 5 of the Official Code of West Virginia, as amended, the Secretary of State of West Virginia, at all times relevant herein, kept and preserved a public record described by statute as 'a journal of executive proceedings,' and designated by the Secretary of State as the 'Executive Journal,' in which said Secretary of State recorded all pertinent data relating to appointments to office made by the Governor and commissions issued pursuant thereto and that said Secretary of State likewise filed, kept and preserved as public records all letters of appointment executed by the Governor of the State of West Virginia; that pursuant to his duties as aforesaid the Secretary of State properly filed, kept and preserved as a public record the aforesaid letter of Clarence W. Meadows appointing this respondent as a member of the West Virginia Board of Education and that he likewise recorded and properly indexed in the aforesaid journal a record of said appointment and issuance of a commission by the Governor pursuant thereto, which record included all pertinent data contained in the aforesaid letter of appointment and the aforesaid commission."

At the expiration of the term of his office on January 18, 1949, the Legislature then being in session, Governor Meadows was succeeded as Governor of the State of West Virginia by the Honorable Okey L. Patteson, who, at the then pending regular session of the Legislature, submitted to the State Senate on March 9, 1949, a written list of names, which included the name of the respondent, Raymond Brewster, "naming" Brewster to the office of member of the West Virginia Board of Education for the term ending June 30, 1952, for the Fourth Congressional District, and requesting the favorable advice and consent of the Senate to make such named appointments; and the

State Senate, acting upon the list of names submitted by Governor Patteson, confirmed the respondent, Raymond Brewster, for the office of member of the West Virginia Board of Education for the term ending June 30, 1952, but the stipulation expressly states that the respondent does not agree or admit that it was necessary for Governor Patteson affirmatively to submit the name of the respondent to the Senate for confirmation in order for the Senate properly to consider and consent to the appointment of respondent to the office of member of the West Virginia Board of Education, for the term ending June 30, 1952.

The stipulation further states that Governor Patteson by letter dated June 26, 1952, and directed to the Honorable D. Pitt O'Brien, Secretary of State of West Virginia, with a copy to Honorable J. Howard Myers, Clerk of the State Senate, during the recess thereof, "reappointed" the respondent Raymond Brewster to the office of member of the West Virginia Board of Education, effective July 1, 1952, for the term ending June 30, 1961, a copy of which letter was filed with the petitioner's information in this cause as an exhibit thereto and made a part of the stipulation.

Though the respondent accepted the "appointment" tendered to him by Governor Patteson, and duly qualified as a member of the West Virginia Board of Education by taking the prescribed oath of office, and contemporaneously with the issuance of the letter of appointment by Governor Patteson of June 26, 1952, and pursuant to Code, 6-4-3, a commission was issued to the respondent, the stipulation states that the respondent Brewster does not agree or admit that his appointment was in fact and in law a nomination of respondent by Governor Patteson for the office in question. The stipulation states that "at the time of the aforesaid appointment of Raymond Brewster by Governor Okey L. Patteson, on June 26, 1952, the respondent, Raymond Brewster, was lawfully serving as a member of the West Virginia Board of Education, pursuant to his original appointment by Governor Clarence W. Meadows, for the term ending June 30, 1952,"

and that, pursuant to the duties imposed upon the Secretary of State by statute, the Secretary of State filed, kept and preserved as a public record, Governor Patteson's letter of June 26, 1952, appointing the respondent, Raymond Brewster, to the office of member of the West Virginia Board of Education, and properly recorded and indexed the same in the journal of executive proceedings, known as the " 'Executive Journal,' a public record", of the appointment and commission issued pursuant thereto, all of which is shown by the certificate of the Secretary of State filed as an exhibit to respondent's answer and made a part of the stipulation.

The stipulation further states that Governor Patteson forwarded a copy of the letter of appointment dated June 26, 1952, to the Honorable J. Howard Myers, Clerk of the State Senate, and editor of the West Virginia Blue Book, a book published pursuant to statute, stating various and comprehensive facts concerning the State, its government, and its officials, with the duties of each thereof, which Clerk of the State Senate in a letter dated June 27, 1952, addressed to Governor Patteson, acknowledged receipt of Governor Patteson's letter of June 26, 1952.

The next session of the State Senate following the appointment of the respondent, Raymond Brewster, by Governor Patteson was legally organized and convened on January 14, 1953, as provided by West Virginia Constitution, Article VI, Section 18.

Though Governor Patteson's term of office as Governor of West Virginia expired on January 18, 1953, he did not, as Governor of the State of West Virginia and during his term as Governor, at any time take any action, other than that heretofore recited, with reference to the appointment of the respondent, or any other person, to the office of member of the West Virginia Board of Education for the term ending June 30, 1961; and the stipulation states that the respondent does not agree or admit that it was necessary for Governor Patteson to take further action in order

for the State Senate properly to consider and consent to the appointment of respondent to the office in question.

On January 18, 1953, while the Legislature, which had convened on January 14, 1953, was still in session, Honorable William C. Marland duly qualified as Governor of West Virginia, and during the session of the State Senate did not nominate the respondent, Raymond Brewster, for the office in question for the remainder of the term thereof ending June 30, 1961; but Governor Marland did on March 12, 1953, submit to the State Senate a written list of names, which included the name of one Homer Gebhardt, purporting to nominate Gebhardt to the office of member of the West Virginia Board of Education for the Fourth Congressional District for the term ending June 30, 1961, and the State Senate during its next regular session, convened after the action of Governor Patteson in reference to the office of member of the West Virginia Board of Education for the Fourth Congressional District, took such action as is shown by a copy of the minutes of the State Senate's meeting in executive session on March 14, 1953, a copy of which is made an exhibit to petitioner's information and made a part of the stipulation.

The Executive Journal of the State Senate of March 14, 1953, discloses that Governor Marland's letter of March 12, 1953, was laid before the President of the Senate and read by the Clerk of the Senate, which letter listing the names and addresses of ninety-six "nominees" of Governor Marland, together with the office to which each had been "nominated", included: "For Member of the West Virginia Board of Education—Homer Gebhardt Huntington, Cabell County, (R) 4th Congressional District." The minutes of the executive session of the State Senate held on March 14, 1953, disclose that the members of the Senate present voted unanimously in the affirmative on the question: "Shall the foregoing nominations of the Governor, with the exception of the nominations for West Virginia State Board of Education and West Virginia University Board of Governors, for the positions and terms shown in

his communication, be confirmed?" Then, upon motion duly carried, the letter of Governor Patteson, dated June 26, 1952, addressed to Honorable D. Pitt O'Brien, Secretary of State of West Virginia, notifying the Secretary of State that Governor Patteson had "reappointed" the respondent, Raymond Brewster, as a member of the West Virginia Board of Education, effective July 1, 1952, for the term ending June 30, 1961, and requesting that a commission be issued to the respondent accordingly; and the letter of June 23, 1952, addressed by Governor Patteson to the Secretary of State in reference to the reappointment of A. C. Spurr of Fairmont, as a member of the West Virginia University Board of Governors, effective July 1, 1952, for the term ending June 30, 1961, were read to the Senate and spread upon the executive records of the meeting. Acting upon these letters, the Senate thereupon, while still in executive session, adopted a motion that the communications of Governor Patteson under date of June 26, 1952, addressed to the Secretary of State, with respect to the nomination of Raymond Brewster to the West Virginia Board of Education, a signed copy of which, the motion recites, was delivered to Honorable J. Howard Myers, Clerk of the Senate, and the letter of June 23, 1952, in reference to the "reappointment" of A. C. Spurr as a member of the West Virginia University Board of Governors, be treated and considered by the Senate as the "nominations" of the gentlemen named, "as required by the Constitution and statutes." The Senate then, upon motions duly carried "confirmed" the nomination of the respondent for member of the West Virginia Board of Education for the term set out in Governor Patteson's communication, and confirmed "the nomination of A. C. Spurr, of Fairmont, Marion County, for member of the West Virginia University Board of Governors, for the position and term set out in the communication from Governor Okey L. Patteson"; and the President of the Senate announced that both nominations had been confirmed by a majority of the members elected to the Senate having voted in the affirmative. And, finally, so far as the actions of the State

Senate bear on the decision in this case, the Senate, upon motion duly adopted, refused "to act on the nominations of Homer Gebhardt, of Huntington, Cabell County, for member of the West Virginia State Board of Education, and Carl J. Carter, M. D., of Fairmont, Marion County, for member of the West Virginia University Board of Governors, for the reason that no vacancy in the offices for which these gentlemen were nominated, now exists."

The stipulation further states that following the convening of the regular session of the State Senate on January 14, 1953, and that at all times thereafter, the respondent, Raymond Brewster, has continued to attend all meetings held by the West Virginia Board of Education, and at such meetings and otherwise respondent has continued to assume, use, exercise, enjoy and perform the franchise and office, together with the functions, duties and powers thereof, of member of the West Virginia Board of Education for the term of office ending on June 30, 1961, and that in particular the board on February 5 and 6, 1953, duly held a meeting at its offices in the State Department of Education at the State Capitol in Charleston, West Virginia, at which respondent was present and did assume, use, exercise, enjoy and perform the franchise and office, together with the functions, duties and powers thereof as a member of the board from the Fourth Congressional District for the term beginning July 1, 1952, and ending June 30, 1961; and more particularly the respondent in the same way participated in like meetings held at the State Capitol in Charleston on March 25 and 26, 1953, but the stipulation states that the petitioner does not agree or admit that respondent was legally exercising the power of the office in question, or was acting in the capacity of a *de jure* officer.

Further the stipulation states that respondent still does hold the public office in question for the term thereof ending on June 30, 1961, but petitioner does not agree or admit that respondent holds the office in question in the capacity of a *de jure* officer.

The stipulation states that a certified copy of the letter dated March 12, 1953, from Governor Marland to the State Senate, appointing Homer Gebhardt to the office of member of the West Virginia Board of Education for the Fourth Congressional District, filed with the information in this proceeding as an exhibit thereto, is made a part of the stipulation, but that the respondent does not agree or admit that the letter constitutes a nomination or had any legal effect.

Further, the stipulation states in Section (24) thereof that neither Governor Patteson nor Governor Marland took any action to revoke the appointment of the respondent, Raymond Brewster, as a member of the Board of Education for the term beginning July 1, 1952, and ending June 30, 1961, unless the action of Governor Marland in submitting to the State Senate "the aforesaid nomination" of Homer Gebhardt to the office in question had such legal effect; and further it is stated in the stipulation that the petitioner does not agree or admit that it was necessary for Governor Patteson or Governor Marland to take any action to revoke the appointment of the respondent. The stipulation further states that the petitioner denies the relevancy of the paragraph numbered (24) in the stipulation.

The stipulation states in the paragraph numbered (25) that after the action of the State Senate on March 14, 1953, in confirming the appointment of the respondent, Raymond Brewster, to the office in question, and in refusing to act upon the nomination of Homer Gebhardt to such office, Governor Marland has not attempted to make any other or further nomination or appointment for membership on the West Virginia Board of Education to take the place of the respondent, Raymond Brewster, as a member of the board; but the stipulation states that the petitioner does not agree or admit that it was necessary for Governor Marland to make any further nomination or appointment of any person to take the place of the respondent, Raymond Brewster, as a member of the board of education,

and further the stipulation states that the petitioner specifically denies the relevancy of the paragraph numbered (25).

It is further stipulated that it has been the common practice of the Governors of this State to submit to the Senate next in session, a written list of the names of the appointees of the Governors during recesses of the Senate, with a request for the favorable advice and consent of the Senate on such appointments.

Section 1, Article 2, Chapter 72, Acts of the Legislature, Regular Session, 1947, amending and reenacting Code, 18-2-1, creating a state board of education to be known as the West Virginia Board of Education, providing how it shall be constituted, the terms of office of the members thereof, the filling of vacancies on the board, the removal of members of the board, and the qualification of members thereof by the taking of the prescribed oath, is controlling in the decision of this case; and was enacted by the Legislature, pursuant to the plain and plenary provisions of West Virginia Constitution, Article IV, Section 8, which provides: "The Legislature, in cases not provided for in this Constitution, shall prescribe, by general laws, the terms of office, powers, duties and compensation of all public officers and agents, and the manner in which they shall be elected, appointed and removed."

In *Eskew* v. *Buckhannon Bank,* 115 W. Va. 579, 587, 177 S. E. 433, 437, this Court applied the rule applicable in the interpretation of every State Constitution, as distinguished from the Constitution of the United States, that the Constitution of a state "is not a grant of powers to the legislature and the legislature is supreme unless restricted by the Constitution." To the effect that the State Legislature is the supreme law-making body within the State, and, as such, may enact any law not prohibited by the State or Federal Constitutions, see *Harbert* v. *Harrison County Court,* 129 W. Va. 54, 39 S. E. 2d 177, *State* v. *Huber,* 129 W. Va. 198, 40 S. E. 2d 11; and generally 4 M. J., Constitutional Law, Section 61, and the many cases cited

under notes 17, 18, 19 and 20 thereof. See in particular the cases of *State ex rel. Thompson* v. *Morton* and *State ex rel. Donohoe* v. *Hutchinson*, (W. Va.) 84 S. E. 2d 791.

In the year following the adoption of the present Constitution of West Virginia in 1872, which contained Article IV, Section 8, this Court held in point 3 of the syllabus of *Bridges* v. *Shallcross*, 6 W. Va. 562, that: "Prescribing the 'manner' in which public officers shall be elected and removed, as expressed in the 8th section of art. 4 of the constitution of the State of West Virginia, when read and considered in connection with article 7, secs. 1 and 8, and sec. 40 of article 6 and other sections of the same constitution, includes the agent or person who may appoint, as well as the formality with which it should be done."

For the reason that Section 1, Article 2, Chapter 72, Acts of the Legislature, Regular Session, 1947, amending and reenacting Code, 18-2-1, in clear language, which is mandatory in its express terms, provides that the members of the West Virginia Board of Education, other than the state superintendent of schools, "* * * shall be * * *, appointed by the governor, by and with the advice and consent of the Senate," initially it is important to note that West Virginia Constitution, Article VII, Section 8, which *inter alia,* provides that "The Governor shall *nominate,* and by and with the advice and consent of the Senate, * * * appoint all officers whose offices are established by this Constitution, or shall be created by law, and *whose appointment or election is not otherwise provided for; * * *"* (italics supplied), has no application in the decision of this case.

By virtue of the italicized words contained in West Virginia Constitution, Article VII, Section 8, excluding from the operation of this section those officers *"whose appointment or election is not otherwise provided for;"* this Court is at liberty to apply in the decision of this case the unambiguous and mandatory provisions of Section 1, Article 2, Chapter 72, Acts of the Legislature, Regular Session, 1947, amending and reenacting Code, 18-2-1, which

statute was enacted under the broad provisions of West Virginia Constitution, Article IV, Section 8, vesting in and reserving to the Legislature, in cases not provided for in the Constitution, the power to "prescribe, by general laws, the terms of office, powers, duties and compensation of all public officers and agents, and the manner in which they shall be elected, appointed and removed." Unlike West Virginia Constitution, Article VII, Section 8, which empowers the governor to *nominate,* and by and with the advice and consent of the Senate, appoint, certain officers designated therein, the statute under consideration and controlling in the decision of this case provides that the governor shall "appoint" the nine members of the West Virginia Board of Education, other than the state superintendent of schools, by and with the advice and consent of the Senate.

It should also be observed that the issuance of a commission to the respondent, Raymond Brewster, as a member of the West Virginia Board of Education for the Fourth Congressional District for the term ending June 30, 1952, pursuant to the letter addressed to the Secretary of State by Clarence W. Meadows, then Governor of this State, dated July 1, 1947, is of no moment in the decision of this case. *Marbury* v. *Madison, Secretary of the United States,* 1 Cranch 137, 2 L. ed. 60. At the time of respondent's appointment to the board of education, pursuant to Governor Meadows' letter, the Legislature was not in session. When the Legislature convened at its next regular session on January 12, 1949, as provided by West Virginia Constitution, Article VI, Section 18, the Senate took no action with reference to Governor Meadows' letter.

Governor Meadows' term as Governor of this State having expired on January 18, 1949, without the Senate having taken any action on the letter of July 1, 1947, Honorable Okey L. Patteson, who succeeded Governor Meadows as Governor of the State, on March 9, 1949, submitted to the State Senate a list of names, which included the name of the respondent for member of the West Vir-

ginia Board of Education for the Fourth Congressional District for the term ending June 30, 1952, and requested the favorable advice and consent of the Senate to appoint the named persons. The Senate, acting upon the list submitted by Governor Patteson, having confirmed the respondent for the office of member of the board of education for the term ending June 30, 1952, the respondent, no matter what his status was prior to the time that the State Senate acted on Governor Patteson's list of appoinments, was a *de jure* member of the West Virginia Board of Education for the term of office which expired on June 30, 1952.

This brings us directly to the question whether the expiration of the term of Raymond Brewster as a *de jure* member of the West Virginia Board of Education on June 30, 1952, created a vacancy during the recess of the State Senate. If the expiration of Brewster's term as a *de jure* member of the board of education on June 30, 1952, created a vacancy, we would have the question before us whether the provision of Section 1, Article 2, Chapter 72, Acts of the Legislature, 1947, amending and reenacting Code, 18-2-1, providing: "Any vacancy on the board shall be filled by the governor by appointment for the unexpired term", is unconstitutional, in that it does not require, as provided by West Virginia Constitution, Article VII, Section 9, that "In case of a vacancy, during the recess of the Senate, in any office which is not elective, the Governor shall, by appointment, fill such vacancy, until the next meeting of the Senate, when he shall make a nomination for such office, and the person so nominated, when confirmed by the Senate, * * * shall hold his office during the remainder of the term, and until his successor shall be appointed and qualified."

At this point it is to be noted that West Virginia Constitution, Article VII, Section 9, providing for the filling of a vacancy in a nonelective office during the recess of the Senate, and thereafter for nomination by the governor and confirmation by the Senate, does not contain the qualifying provision contained in West Virginia Constitution,

Article VII, Section 8, that "* * * and whose appointment or election is not otherwise provided for; * * *."

We, however, are of opinion that the expiration of respondent's term of office on June 30, 1952, as a *de jure* member of the West Virginia Board of Education, did not create a vacancy within the meaning of either West Virginia Constitution, Article VII, Section 9, or Section 1, Article 2, Chapter 72, Acts of the Legislature, Regular Session, 1947, amending and reenacting Code, 18-2-1. We are well aware, however, that the decisions of the Courts in other jurisdictions on the question whether the expiration of the term of a *de jure* officer constitutes a vacancy are variant. For the many divergent decisions in other jurisdictions, see generally 43 Words and Phrases, dealing with the expiration of a term of public office, pages 616, 618, and 619, and the Cum. Pocketpart of Volume 43. See in particular the case of *People ex rel. Ryder* v. *Mizner,* 7 Cal. 519, which is exactly in point with the case at bar on the question whether the expiration of respondent's *de jure* term of office on June 30, 1952, created a vacancy, in which case the Supreme Court of California, in considering a provision of the Constitution of California similar to the provision empowering the Governor of this State to appoint members of the West Virginia Board of Education, contained in Section 1, Article 2, Chapter 72, Acts of the Legislature, Regular Session, 1947, held that where the appointment of an office is vested by the Constitution of California in the governor, with the advice and consent of the Senate, and at the expiration of the term of an incumbent during a recess of the Legislature the governor appoints a successor to the office, "* * * there was no vacancy within the true intent and meaning of the Constitution, * * *" and the appointment vested in the appointee a right to hold the office for the full term thereof, subject to be defeated by the nonconcurrence of the Senate. See generally 67 C. J. S., Officers, Section 50, in which the rule is stated that: "The law abhors vacancies in public offices, and courts generally indulge in a strong presumption against a legislative intent to create, by statute, a condi-

tion which may result in an executive or administrative office becoming, for any period of time, wholly vacant and unoccupied by one lawfully authorized to exercise its functions."

The question as to what constitutes a vacancy in a public office has been considered by this Court. In point 3, erroneously designated in the Official Reports as point 2, of the syllabus of *Kline* v. *McKelvey,* 57 W. Va. 29, 49 S. E. 896, this Court held that incumbency of an office by holding over does not preclude the existence of a vacancy as the basis for the exercise of the appointive power under Section 5, Chapter 45, of the West Virginia Code, 1899; in *State* v. *Scott,* 36 W. Va. 704, 15 S. E. 405, this Court held that the word "vacancy", when used in a statute, does not necessarily presuppose a former incumbent of office, but that it describes also the condition of an office newly created, and never filled by any previous incumbent, as was so in the case of *Bridges* v. *Shallcross,* supra; and in point 1 of the syllabus of *State ex rel. Jones* v. *Ingram, Recorder of the Town of Cedar Grove,* 135 W. Va. 548, 63 S. E. 2d 828, this Court held that there is no vacancy where there is an incumbent legally authorized to discharge the duties of his office. The holdings in these cases by this Court are not applicable to the case at bar, because this case concerns the specific question whether the expiration of the term of a member of the West Virginia Board of Education, during the recess of the Senate, constitutes a "vacancy" within the meaning of Section 1, Article 2, Chapter 72, Acts of the Legislature, Regular Session, 1947, so as to bring into operation the provisions of West Virginia Constitution, Article VII, Section 9.

As heretofore stated, West Virginia Constitution, Article IV, Section 8, vested in the Legislature full and plenary power, in cases not provided for by the Constitution, to prescribe, by general laws, the terms of office, powers, duties and compensation of all public officers and agents, and "the manner in which they shall be elected, appointed and removed"; and Constitution, Article VII, Section 8,

provides that the governor shall "nominate", and, by and with the advice and consent of the Senate, "appoint" the officers, whose offices are established by the Constitution or shall be created by law, and "whose appointment or election is not otherwise provided for; * * *". By the very provisions of the Constitution itself we are at liberty to apply the express provisions of Section 1, Article 2, Chapter 72, Acts of the Legislature, 1947, amending and reenacting Code, 18-2-1.

Section 1 of the statute inferentially expresses the legislative fiat that a vacancy does not occur in the office of member of the board by virtue of the expiration of the term of a *de jure* member. By the express language of Section 1 of the statute the Legislature expressed the intent that the word "vacancy", as used in the statute, means the result of a fortuitous event occurring during the unexpired term of an office. It follows that upon the expiration of Raymond Brewster's term as a *de jure* member of the West Virginia Board of Education on June 30, 1952, no vacancy occurred. It also follows that Governor Patteson was at liberty under the provisions of the statute itself to make an appointment for the term beginning July 1, 1952, and ending on June 30, 1961. This he did by his letter of June 26, 1952, addressed to Honorable D. Pitt O'Brien, Secretary of State, with a copy thereof directed to the Clerk of the State Senate, stating that he "had reappointed" the respondent, Raymond Brewster, to the office of member of the West Virginia Board of Education for the term beginning July 1, 1952, and ending June 30, 1961.

That the Legislature intended by the enactment of Section 1, Article 2, Chapter 72, Acts of the Legislature, Regular Session, 1947, amending and reenacting Code, 18-2-1, to vest in the governor the power to appoint a member of the board of education during the recess of the Senate, whenever the term of a *de jure* member expires, appears clearly from the provisions of the statute itself, read in connection with West Virginia Constitution, Article VI, Sections 18, 19, and 22. Section 18 of the Constitution pro-

vides: "* * * The first session of the Legislature, after the adoption of this Constitution, shall commence on the third Tuesday of November, 1872; and the regular biennial session of the Legislature shall commence on the second Wednesday of January, 1875, and every two years thereafter, on the same day." Section 19 provides for the convening of extraordinary sessions of the Legislature. Section 22 provides: "All sessions of the Legislature, other than extraordinary sessions, shall continue for a period of sixty days from the date of beginning. But all regular sessions may be extended by the concurrence of two-thirds of the members elected to each house." Section 22, which originally read: "No session of the Legislature, after the first, shall continue longer than forty-five days, without the concurrence of two thirds of the members elected to each House", was amended to its present form under Senate Joint Resolution No. 3, page 498, Acts of the Legislature, 1919, by an amendment adopted on February 12, 1919, and ratified at the general election held in November, 1920.

The Legislature in the enactment of Section 1, Article 2, Chapter 72, Acts of the Legislature, Regular Session, 1947, amending and reenacting Code, 18-2-1, as in the case of all legislative enactments, was presumed to know the provisions of the West Virginia Constitution. In point 5 of the syllabus of *Webb* v. *Ritter,* 60 W. Va. 193, 194, 54 S. E. 484, this Court held: "In construing statutes, courts must presume knowledge on the part of the Legislature of the provisions of the organic law of the state, relating to the subject matter thereof, as well as of the principles of the common law, and will not impute to that body any intention to obstruct or impede the operation of constitutional provisions, or to innovate upon the settled policy of the law."

Surely the Legislature did not intend by the enactment of the statute creating the West Virginia Board of Education to create an hiatus in the membership of that board.

It is important to note that Section 1 of the statute pro-

vides that the nine members of the West Virginia Board of Education, other than the state superintendent of schools, an *ex officio* member who shall not be entitled to vote, shall be "appointed by the governor, by and with the advice and consent of the Senate, for overlapping terms * * *, except that the original appointments shall be for terms of one, two, three, four, five, six, seven, eight and nine years, respectively"; that "The governor shall appoint all members of the state board as soon after the effective date hereof as is practicable for respective terms of office beginning on the first day of July, one thousand nine hundred forty-seven"; and that "The terms of office of present members of the state board shall expire on the thirtieth day of June, one thousand nine hundred forty-seven."

As the Legislature is presumed to know the provisions of West Virginia Constitution, Article VI, Sections 18, 19 and 22, which govern the sessions of the Legislature, the express wording of the statute shows that the Legislature intended that the Governor of the State would be required, under Section 1 of the statute, in many instances to make interim appointments, when the terms of the members of the board of education expire, that is, except on the rare occasions when there is an extraordinary session of the Legislature, or when the regular session, under Article VI, Section 22 of the Constitution, has been extended by the concurrence of two-thirds of the members elected to each House.

Unlike the Constitution of the United States, Article II, Section 2, which provides that the President of the United States "shall nominate, and by and with the Advice and Consent of the Senate, shall appoint Ambassadors, other public Ministers and Consuls, Judges of the supreme Court, and all other Officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by Law: * * *", which the Supreme Court of the United States had under consideration in the famous case, decided early by that Court, of

*Marbury* v. *Madison, supra;* and unlike West Virginia Constitution, Article VII, Section 8, which provides for the nomination by the governor of certain officers, and West Virginia Constitution, Article VII, Section 9, which provides for the filling of a vacancy in a non-elective office during the recess of the Senate, the statute pertinent to the decision of this case, Section 1, Article 2, Chapter 72, Acts of the Legislature, Regular Session, 1947, vests in the Governor the power, at the expiration of the term of a *de jure* member of the West Virginia Board of Education to "appoint", as distinguished from "nominate", a qualified person as a member of the West Virginia Board of Education.

Therefore, when, as the respondent Raymond Brewster's term as a *de jure* member of the board, which was to expire on June 30, 1952, was nearing its close, Governor Patteson by his letter of June 26, 1952, addressed to the Secretary of State, a copy of which was delivered to the Clerk of the Senate, "reappointed" the respondent to the board for the ensuing term, beginning July 1, 1952, and ending June 30, 1961, he thereby exhausted all his powers under the statute, and created Brewster a *de jure* member of the West Virginia Board of Education for the ensuing term, with all the powers and emoluments of a member of the board of education, which were and would be invested in him until the State Senate acted thereon, as provided by Section 1, Article 2, Chapter 72, Acts of the Legislature, Regular Session, 1947. That Governor Patteson addressed his letter of June 26, 1952, to the Secretary of State, which directed that a commission be issued to the respondent, Raymond Brewster, accordingly, and sent a copy of that letter to the Clerk of the Senate, is, in our opinion, of no moment in the decision of this case. The letter to the Secretary of State only evidences the fact that Governor Patteson did, in fact, appoint the respondent, Raymond Brewster, to the West Virginia Board of Education for the ensuing term, subject to confirmation of the appointment by the Senate, pursuant to Section 1. If, however, the Senate had not acted favorably on Gover-

nor Patteson's appointment of respondent to the board of education, the governor would have been at liberty to appoint another person. See *State ex rel. Downey* v. *Sims,* 125 W. Va. 627, 26 S. E. 2d 161, in which this Court held unconstitutional Chapter 52, Acts of the Legislature, 1943, which provides that "No person whose nomination for office has been rejected by the senate shall be again nominated for the same office during the session in which his nomination was so rejected, unless at the request of the senate, nor shall he be appointed to the same office during the recess of the senate, nor shall he be appointed, during the recess of the senate in which his nomination was rejected, to any other office the nomination for which must be submitted to the senate for confirmation."

Section 1, Article 2, Chapter 72, Acts of the Legislature, Regular Session, 1947, in clear language vests in the governor the power to make the appointment for the term succeeding the term held by the respondent, which would expire on June 30, 1952, and the Legislature by the use of the words in Section 1 "by and with the advice and consent of the Senate" intended that an appointment made during a legislative interim should be subject to confirmation by the Senate when convened. Both of these events occurred in the case of respondent, and he, therefore, became by the action of Governor Patteson in the first instance during the legislative interim, and by the confirmation of the Senate, a *de jure* member of the board of education for the term expiring on June 30, 1961. The requirements of Section 1 of the statute having been complied with in both particulars, it matters not how the Senate became informed of Governor Patteson's action in appointing the respondent.

Governor Patteson having effectively appointed respondent a member of the board of education for the term in question, subject to confirmation by the Senate, the fact that Governor Patteson's term of office expired on January 18, 1953, and his successor as governor, Honorable William C. Marland, in submitting to the State Senate the

names of his appointees by his message of March 12, 1953, substituted the name of Homer Gebhardt for that of the respondent, did not void the appointment of respondent by Governor Patteson during the legislative interim. Governor Patteson having created by his appointment the respondent a *de jure* member of the West Virginia Board of Education for the term beginning July 1, 1952, and ending June 30, 1961, subject to confirmation by the Senate, neither he nor his successor, Governor Marland, could, without rejection of respondent's appointment by the Senate, remove respondent from the *de jure* office which he held, without compliance with Section 1 of the statute, which provides that: "No member of the state board may be removed from office by the governor except for official misconduct, incompetence, neglect of duty, or gross immorality, and then only in the manner prescribed by law for the removal by the governor of state elective officers."

Imbedded in our organic law is the postulate that the executive power is a continuing power, not broken by succession, and serves to preserve the stability and integrity of constitutional government. *Barrett* v. *Duff,* 114 Kan. 220, 217 P. 918.

In *Barrett* v. *Duff, supra,* involving original proceedings in *quo warranto* to determine the titles to the offices of state inspector of oils, judge of the court of industrial relations, and member of the public utilities commission, the Supreme Court of Kansas, *inter alia,* had under consideration Section 1, Chapter 29 of the Laws of 1920 of Kansas, which created a tribunal, to be known as the court of industrial relations, which was to be composed of three judges, who were to be appointed by the governor, by and with the advice and consent of the Senate. The Court held that the appointment of the defendant Duff, who was duly qualified and entered upon his official duties as a judge of the court of industrial relations, could not be revoked or annulled by a governor succeeding the governor who made the appointment, notwithstanding

the latter governor had substituted another for the appointee Duff to the Kansas Senate before the Senate had acted on Duff's appointment; and that the confirmation by the Senate of Duff's appointment served to vest him with the office in question for the term for which he had been appointed. So this case is in point with the instant case. The holding of the Supreme Court of Kansas in the *Duff* case is aptly stated in points 1, 3, 4, and 6 of the syllabus prepared by the Court, which read:

> "1. The executive power of the Governor is a continuing power, never ending, and not broken by succession.
>
> \* \* \*
>
> "3. Where the power of the Governor has been exercised by the appointment to an office, and the appointee has qualified and been vested with the powers and prerogatives of the office, neither the Governor nor his successor has any further control over the appointment unless and until the appointee has been rejected by the Senate.
>
> "4. Where the term of an office is fixed by statute, the power of removal does not exist in the executive except so far as provided by statute.
>
> \* \* \*
>
> "6. When the appointee to an office, the tenure of which is declared by law, is commissioned by the Governor and vested with the power and prerogatives of the office, neither that Governor nor his successor can revoke the appointment."

Consonant with the holding of the Supreme Court of Kansas, the Court of Appeals of Kentucky held in the case of *McChesney* v. *Sampson, Governor*, 232 Ky. 395, 23 S. W. 2d 584, 586, that one appointed by the governor as a member of the state text book commission for a definite term of years, who has accepted the appointment, qualified and entered into the exercise of the functions of the office, cannot summarily and without cause be removed from office, where the statute, Section 3750 of the Kentucky Statutes provides: " 'No person appointed to an office by the governor, by and with the advice and consent of the

senate, shall be removed therefrom by the governor, during the term for which he was appointed, unless for failure to discharge, or neglect in the performance of the duties of his office * * *' " notwithstanding the consent of the Senate of Kentucky to the appointment required by statute had not been obtained. In that case the Court held that under the provision of the Constitution of Kentucky, Kentucky Constitution Section 91, requiring the Secretary of State of Kentucky to keep a register of the official acts of the governor, an appointment of an officer by the governor is not required to be communicated to the Senate; but the Senate must take notice of the contents of the register, and at its next session under the mandatory provision of Ky. St. Section 3750, act on appointments.

In the case of *The People ex rel. Ryder* v. *Mizner, supra,* in which the Supreme Court of California held *inter alia* that a governor, who has made an interim appointment at the expiration of an incumbent's term of office during a recess of the Legislature, has exhausted the full power of appointment vested in him by the Constitution of California, subject to the action of the Senate thereon.

The rationale of the rule governing the removability of officers appointed by the executive applied in the cases of *Barrett* v. *Duff, supra; McChesney* v. *Sampson, Governor, supra,* and *The People ex rel. Ryder* v. *Mizner, supra,* is stated by Chief Justice Marshall in the case of *Marbury* v. *Madison, supra,* as follows: "Where an officer is removable at the will of the executive, the circumstance which completes his appointment is of no concern; because the act is at any time revocable; and the commission may be arrested, if still in the office. But when the officer is not removable at the will of the executive, the appointment is not revocable, and cannot be annulled. It has conferred legal rights which cannot be resumed. The discretion of the executive is to be exercised until the appointment has been made. But having once made the appointment, his power over the office is terminated in all cases, where by law, the officer is not removable by

him. The right to the office is then in the person appointed, and he has the absolute, unconditional power of accepting or rejecting it." But as the Supreme Court of the United States in the *Marbury* case had under consideration United States Constitution, Article II, Section 2, which provides that: "* * * he [the President] shall nominate, and by and with the Advice and Consent of the Senate, shall appoint [certain enumerated officers] and all other Officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by Law: * * *", the quoted statement of the Court, though highly persuasive in the decision of the case at bar, does not bear on the precise question in the case at bar, and was not necessary to the decision in the *Marbury* case.

That the State Senate at the regular session of the Legislature, which was organized and convened on January 14, 1953, acted on Governor Patteson's appointment of the respondent for the term as member of the West Virginia Board of Education ending on June 30, 1961, appears clearly from the Executive Journal of the Senate of March 14, 1953. It would be redundant and is unnecessary for this Court to recite in detail the happenings at that executive session of the State Senate. It suffices to say that the Executive Journal of the State Senate for that day discloses that the message of Governor Marland, dated March 12, 1953, listing the names and addresses of ninety-six "nominees", together with the office to which each had been "nominated", including "For Member of the West Virginia Board of Education—Homer Gebhardt, Huntington, Cabell County, (R) 4th Congressional District"; that the members of the Senate present voted unanimously in the affirmative on the question whether the appointments made by Governor Marland, with the exception of the "nominations" for West Virginia Board of Education and West Virginia University Board of Governors for the positions and terms contained in Governor Marland's message, be confirmed; and that Governor Patteson's letter, dated June 26, 1952, addressed to the Secretary of State, purporting to "reappoint" the respond-

ent, Raymond Brewster, as a member of the West Virginia Board of Education for the term beginning July 1, 1952, and ending June 30, 1961, and requesting that a commission be issued to the respondent accordingly, was likewise read to the Senate. The Senate thereupon adopted a motion that the letter be treated and considered by the Senate as a "nomination" by the Senate of the respondent as a member of the West Virginia Board of Education for the term in question; that upon motion the Senate confirmed the nomination of the respondent as member of the board for that term; and that the Senate, upon motion duly adopted, refused to act on the nomination of Homer Gebhardt for member of the West Virginia Board of Education, submitted by Governor Marland, as well as the nomination of Carl J. Carter, M. D., of Fairmont, for member of the West Virginia University Board of Governors, "for the reason that no vacancy in the offices for which these gentlemen were appointed now exists."

As respondent, Raymond Brewster, by virtue of his initial appointment to the board of education for the term ending June 30, 1961, together with the commission issued to him for that office, became a *de jure* and legally constituted member of the board for the term in question, it follows that Governor Marland's attempt to appoint Homer Gebhardt as a member of the West Virginia Board of Education in lieu of the appointment made by Governor Patteson was ineffective, and did not serve to remove the respondent from the *de jure* office to which he had been legally appointed by Governor Patteson, by and with the advice and consent of the Senate, for the full term ending June 30, 1961, because in no uncertain terms Section 1, Article 2, Chapter 72, Acts of the Legislature, Regular Session, 1947, amending and reenacting Code, 18-2-1, provides that "No member of the state board may be removed from office by the governor except for official misconduct, incompetence, neglect of duty, or gross immorality and then only in the manner prescribed by law for the removal by the governor of state elective officers."

The manner prescribed by law for the removal by the governor of such elective officers is fully embraced in Code, 6-6-5, which provides for the removal by the governor of any state officer holding an elective office; and Code, 6-6-6, provides in detail the procedure for such removal and for an appeal to this Court, or to a Judge thereof in vacation, by any person feeling aggrieved by his removal from office by the governor. Code, 6-6-6, provides that an elective officer sought to be removed from office shall be removed by the governor only after a hearing bearing on the charges for removal, if such is required by the officer against whom charges may have been brought or by the governor at his own instance.

The requirement of Code, 6-6-6, that the charges against an elective state officer, in order to ground removal, "shall be reduced to writing" is mandatory, and should be sufficiently explicit to furnish the defendant with notice of the nature of the charges so as to enable him to contest the wrongful act or acts with which he is charged. 15 M. J., Public Officers, Section 37; *Moore* v. *Strickling,* 46 W. Va. 515, 33 S. E. 274, 50 L. R. A. 279. To the effect that the provisions of Section 7, Chapter 7, West Virginia Code, 1913, now enlarged in Code, 6-6-8, so as to embrace the procedure for the removal of county, district and municipal officers, that the charges against public officers sought to be removed "shall be reduced to writing and entered of record by the court," [Code, 6-6-7] must be literally complied with as a prerequisite to valid process against the officer sought to be removed, see *Dawson* v. *Phillips,* 78 W. Va. 14, 88 S. E. 456. For an exhaustive annotation bearing on the questions of legislative power and executive power to remove a public officer without notice and hearing, see *State ex rel. Nagle* v. *Sullivan,* 98 Mont. 425, 40 P. 2d 995, 99 A. L. R. 321, anno., pages 336-405, inclusive.

The provision of Section 1, Article 2, Chapter 72, Acts of the Legislature, Regular Session, 1947, providing for, specifying and limiting the grounds for the removal of a member of the West Virginia Board of Education, and

the manner for such removal by the governor is grounded upon a salutary public policy, and evidences a legislative intent that the West Virginia Board of Education, inasmuch as it is an integral part of the free school system of this State, should be composed of members, who, as far as possible, are free from political pressure.

The clause providing for the removal of members of the West Virginia Board of Education by the governor, contained in the statute, is an enactment dealing generally with the removal of the members of the West Virginia Board of Education, and is not a special act, interdicted by the provisions of West Virginia Constitution, Article VI, Section 39. Moreover, as the grounds specified in the statute are fairly contained in the several classes of grounds for removal of officers appointed by the governor, contained in West Virginia Constitution, Article VII, Section 10, the clause is, for that further reason, not unconstitutional. *Dawson* v. *Phillips, supra*. For a full discussion of the power of the Legislature to provide for the removal of officers appointed by the governor, see the opinion of this Court in *State ex rel. Thompson* v. *Morton*, and *State ex rel. Donohoe, Member* v. *Hutchinson, supra*, in which the Court held constitutional, Code, 6-6-4, which provides: "Any person who has been, or may hereafter be appointed by the governor to any office or position of trust under the laws of this State, whether his tenure of office is fixed by law or not, may be removed by the governor at his will and pleasure. In removing such officer, appointee, or employee, it shall not be necessary for the governor to assign any cause for such removal."

For the foregoing reasons we are of opinion that the Circuit Court of Kanawha County did not err in denying the prayer of the petition that a writ issue ousting and expelling the respondent, Raymond Brewster, from the office which he now holds as a *de jure* officer for the term beginning July 1, 1952, and ending June 30, 1961. Therefore, the order of the circuit court entered on March 1, 1954, adjudicating that the respondent has shown that

he has a lawful right and title to the office of member of the West Virginia Board of Education for the term beginning July 1, 1952, and ending June 30, 1961, and refusing the judgment of ouster prayed for by the petitioner, is affirmed.

*Affirmed.*

LOVINS, JUDGE, concurring:

I concur in the result reached in this case, but I do not agree that the citation of the cases of *State Ex Rel. A. Garnett Thompson, Member West Virginia Turnpike Commission* v. *D. Holmes Morton, and State Ex Rel. James M. Donohoe, Member West Virginia Turnpike Commission* v. *Hugh F. Hutchinson* are applicable to the issues presented in the instant case. Nor do I agree with any of the reasoning in this opinion based on such citation.

The questions presented in the cases above mentioned are different from those presented in the case at bar.

The mandamus proceeding of *State Ex Rel. A. Garnett Thompson, Member West Virginia Turnpike Commission* v. *D. Holmes Morton and State Ex Rel. James M. Donohoe, Member West Virginia Turnpike Commission* v. *Hugh F. Hutchinson* raises the controlling issue whether the Governor has the authority and power to remove members of the Turnpike Commission heretofore legally appointed by the Governor of this State and thereafter confirmed by the Senate.

In the instant case, the question is: Is an appointment made by an outgoing Governor binding on his successor in the absence of formal nomination communicated to the Senate by the Governor.

I think the issue and the subsidiary issues here presented are resolved correctly in this proceeding in the nature of a writ of *quo warranto.*

The references made in the Court's opinion herein to the mandamus proceedings above mentioned concerning

membership in the Turnpike Commission are not pertinent nor relevant to the issues presented in this proceeding in the nature of a writ of *quo warranto*.

This concurring note is filed in the interest of consistency and with deference to the views of the Court, as set forth in the opinion in the case at bar.