517 S.E.2d 751

**Thomas D. RICE, Appellant,**

v.

**The Honorable Cecil H. UNDERWOOD, Governor of the State of West Virginia, Appellee.**

**No. 25166.**

Supreme Court of Appeals of West Virginia.

Submitted Oct. 7, 1998.

Decided Dec. 11, 1998.

Thomas P. Maroney, Esq., Charleston, West Virginia, Attorney for Appellant.

Darrell V. McGraw, Jr., Esq., Attorney General, John R. Hoblitzell, Esq., Special Assistant Attorney General, Charleston, West Virginia, Attorneys for Appellee.

WORKMAN, Justice:

The Appellant and Petitioner below, Thomas D. Rice ("Appellant"), appeals the denial of his petition seeking to prohibit the Appellee and Respondent below, the Honorable Cecil H. Underwood, Governor of the State of West Virginia ("Governor Underwood"), from removing him as an appointed member of the West Virginia Racing Commission ("Racing Commission") before the expiration of his term and seeking an order that Governor Underwood's appointment of Mr. Rice's successor to the Racing Commission be declared null and void.

This matter was originally brought as a writ of prohibition against Governor Underwood in the Circuit Court of Kanawha County. The circuit court correctly recognized that Appellant's petition for writ of prohibition was inappropriate since it was not directed to an inferior tribunal.[1] Accordingly, the circuit court properly elected to treat Appellant's petition as a writ of mandamus and petition for injunctive relief. Appellant contends that West Virginia Code § 6-6-4 (1993), upon which Governor Underwood based his removal of Appellant, (1) violates

---

1. Prohibition does not lie to control a legislative body or to prevent an executive act. *State ex rel. Miller v. Smith*, 168 W.Va. 745, 755, 285 S.E.2d 500, 506 (1981). The writ of prohibition should be used only to restrain subordinate courts and inferior judicial tribunals from exceeding their jurisdiction. *State ex rel. City of Huntington v. Lombardo*, 149 W.Va. 671, 677, 143 S.E.2d 535, 540 (1965).

the West Virginia Constitution and (2) was repealed by implication with the enactment of West Virginia Code § 19–23–27 (1997). Because we find that West Virginia Code § 6–6–4 is consistent with constitutional provisions, has not been repealed by implication, and was properly invoked by Governor Underwood in removing Appellant from the Racing Commission, we must uphold the circuit court's order denying the relief sought by Appellant.

### I. Background Facts

The basic facts in the case are not disputed. Appellant was appointed as a member of the Racing Commission by former Governor, Gaston Caperton, on August 2, 1996. Appellant's appointment was confirmed by the Senate of the West Virginia Legislature in Special Session on October 16, 1996. Appellant's appointment was for a term ending April 1, 2000. Governor Underwood, without citation of cause, removed Appellant as a member of the Racing Commission effective November 15, 1997. Governor Underwood's November 13, 1997, letter removing Appellant simply stated, "[b]y virtue of the authority vested in me as Governor of West Virginia, I hereby remove you from office as a member of the West Virginia Racing Commission, effective November 15, 1997." Governor Underwood appointed Joseph B. Knotts as Appellant's successor, effective November 16, 1997. Mr. Knotts' appointment was unanimously confirmed by the Senate of the West Virginia Legislature in the 1998 Regular Session on March 14, 1998.

Appellant brought a writ a prohibition against Governor Underwood in the Circuit Court of Kanawha County on November 24, 1997, seeking an order to prohibit Governor Underwood from removing him from the Racing Commission. On that same day, a rule to show cause was issued. On December 4, 1997, Appellant amended his petition and sought an order that Governor Underwood's November 16, 1997, appointment of Joseph B. Knotts to the Racing Commission be declared null and void. As explained above, the circuit court treated Appellant's petition for a writ of prohibition as a writ of mandamus and petition for injunctive relief. After a hearing on the matter, the circuit court issued an order, dated December 19, 1997, denying the relief sought by Appellant and dismissing his petition. The circuit court found that, pursuant to West Virginia Code § 6–6–4, Appellant served as a member of the Racing Commission at the Governor's will and pleasure and, therefore, Governor Underwood was entitled to remove Appellant at his will and pleasure.

### II. Standard of Review

■ The instant appeal comes to this Court by way of a ruling by the circuit court denying Appellant a writ of mandamus against Governor Underwood. When reviewing a circuit court's decision to deny or to grant the extraordinary remedy of mandamus, " '[t]he standard of appellate review of a circuit court's order granting relief through the extraordinary writ of mandamus is de novo.' Syllabus Point 1, Staten v. Dean, 195 W.Va. 57, 464 S.E.2d 576 (1995)." Syl. Pt. 1, O'Daniels v. City of Charleston, 200 W.Va. 711, 490 S.E.2d 800 (1997). In this regard, "we consider de novo whether the legal prerequisites for mandamus relief are present." State ex rel. Cooper v. Caperton, 196 W.Va. 208, 214, 470 S.E.2d 162, 168 (1996).

■ " 'A writ of mandamus will not issue unless three elements coexist—(1) a clear legal right in the petitioner to the relief sought; (2) a legal duty on the part of respondent to do the thing which the petitioner seeks to compel; and (3) the absence of another adequate remedy.' Syllabus Point 1, State ex rel. Billy Ray C. v. Skaff, 190 W.Va. 504, 438 S.E.2d 847 (1993); Syllabus Point 2, State ex rel. Kucera v. City of Wheeling, 153 W.Va. 538, 170 S.E.2d 367 (1969)." Syl. Pt. 2, Staten v. Dean, 195 W.Va. 57, 464 S.E.2d 576 (1995). In reviewing a petitioning party's entitlement to the remedy of mandamus, we examine whether the party seeking the relief has a legal right to such relief and whether a corresponding duty exists that the respondent perform the relief sought.

■ Appellant has also raised issues regarding the correctness of the circuit court's interpretation of statutory and common law. The law in this state is well-settled that, " '[w]here the issue on appeal from the circuit court is clearly a question of law or involving

an interpretation of a statute, we apply a *de novo* standard of review.' Syllabus point 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995)." Syl. Pt. 1, *University of West Virginia Board of Trustees ex rel. West Virginia University v. Fox*, 197 W.Va. 91, 475 S.E.2d 91 (1996).

### III. *Discussion*

Appellant first contends that the lower court erred by failing to recognize that West Virginia Code § 6–6–4, upon which Governor Underwood relied in removing him, violates Article IV, § 6, Article IV, § 8, Article V, § 1, Article VII, § 8, and Article VII, § 10 of the West Virginia Constitution, as they apply to a public officer or board member with staggered fixed terms whose duties are quasi-legislative or quasi-judicial in nature. Appellant argues that the separation of powers doctrine dictates that the executive is not to use the sword of removal of a quasi-judicial or quasi-legislative public officer simply because he wishes to have someone of his own choosing in that office.

Governor Underwood contends that Article IV, § 8 of the West Virginia Constitution permits the legislature to define the means by which appointed public officers holding legislatively-created offices may be removed and the fact that a legislatively-created executive office is appointed subject to Senate confirmation, created for a specific term of years and/or may have a quasi-judicial function does not limit the Legislature's authority to prescribe the means by which that public officer may be removed from office. Additionally, Governor Underwood contends that West Virginia Code § 19–23–4 (1997), which provides for the appointment of racing commissioners by the governor, contains no internal removal provision limiting the governor's authority to remove commissioners, and

that, absent such an internal removal provision, the general removal statute, West Virginia Code § 6–6–4, must be read *in pari materia* with West Virginia Code § 19–23–4.

In removing Appellant, Governor Underwood relied upon West Virginia Code § 6–6–4, which provides as follows:

> Any person who has been, or may hereafter be appointed by the governor to any office or position of trust under the laws of this state, whether his tenure of office is fixed by law or not, may be removed by the governor at his will and pleasure. In removing such officer, appointee, or employee, it shall not be necessary for the governor to assign any cause for such removal.

Through the enactment of this statutory provision, the Legislature codified a general removal statute which authorizes a governor to remove appointed executive officers at a governor's will and pleasure without stating his reasons for removal.

Before turning our discussion to the constitutionality of West Virginia Code § 6–6–4, we must clarify the function of the members of the Racing Commission. Racing Commission commissioners are appointed by the governor for a term of four years subject to Senate confirmation, pursuant to West Virginia Code § 19–23–4(b) (1997).[2] The Racing Commission was created as a public corporation in West Virginia Code § 19–23–4(a). As such, the commissioners are public officers in supervisory positions charged with the operation of a public corporation.

Appellant's effort to characterize the racing commissioners as quasi-judicial or quasi-legislative officers entitled to special legal protection misstates their primary function. Further, the exercise of quasi-judicial power does not change the nature of an administra-

---

**2.** West Virginia Code § 19–23–4(b) provides:

The racing commission shall consist of three members, not more than two of whom shall belong to the same political party, to be appointed by the governor by and with the advice and consent of the senate. The term of office for the members of such racing commission shall be four years, and until their successors have been appointed and have qualified, and members of the racing commission may serve any number of successive terms. The mem-

bers of the racing commission in office on the effective date of this article [July 25, 1969] shall, unless removed by the governor after the effective date of this article, continue to serve until their terms expire and until their successors have been appointed and have qualified. Any vacancy in the office of a member of the racing commission shall be filled by appointment by the governor for the unexpired term of the member whose office shall be vacant....

tive agency. The responsibilities of the members of the Racing Commission are primarily administrative, because they execute the legislative scheme for overseeing and profiting from horse and dog tracks. Their responsibilities include promulgation of rules for the conduct of horse and dog racing; licensing track operators; issuance of permits to owners, jockeys, trainers, pari-mutuel[3] employees and other persons connected with horse and dog racing; hiring staff to maintain records and to supervise racing events and pari-mutuel wagering; inspection of racing kennels and stables; setting racing dates for dog and horse races; registering colors and racing names; fixing purses; testing for doping and other abuse of dogs and horses; deciding disputes on the distribution of purses and authorizing simulcasting of facing events to and from other legal tracks. *See* W.Va.Code §§ 19–23–4, –5, –6, –7 and –12(c) (1997 and Supp.1998).

 The Racing Commission, like other administrative agencies, performs some quasi-judicial functions when it hears appeals of license applications, permit revocations and racing disputes pursuant to West Virginia Code § 19–23–16 (1997), or when it is involved in an investigation of regulatory violations pursuant to West Virginia Code § 19–23–15 (1997). The delegation of quasi-judicial powers to an administrative agency, which includes the power to conduct hearings and make findings of fact, does not violate the separation of powers. *Appalachian Power Co. v. Public Service Commission*, 170 W.Va. 757, 759, 296 S.E.2d 887, 889 (1982). In addition, the deciding of contested cases by a board or regulatory body is a recognized administrative·function and does not transform the administrative agency into a court.

*State v. Huber*, 129 W.Va. 198, 217, 40 S.E.2d 11, 22 (1946).

The Racing Commission is deserving of the close scrutiny of the executive branch. Given the nature of its role as a public corporation generating significant revenues for the state and the public's sensitivity to gambling activities, it is understandable that the Legislature wanted members of the Racing Commission subjected to oversight by an elected official. Empowering the governor with the authority to remove members of the Racing Commission at the governor's will and pleasure places greater responsibility on the governor for the performance of the Racing Commission.

We now turn our discussion to the constitutionality of the general removal statute, West Virginia Code § 6–6–4. Three sections of the West Virginia Constitution specifically speak to the removal of appointed public officers in the executive branch. These sections include Article IV, § 6, Article IV, § 8 and Article VII, § 10.[4] Article IV, § 6 pertains to the general power of the Legislature to provide by law for the removal of all elected and appointed officers for cause unless the officer's removal is otherwise provided for in the constitution. Article IV, § 6 of the West Virginia Constitution specifically provides that:

> All officers elected or appointed under this Constitution, may, unless in cases herein otherwise provided for, be removed from office for official misconduct, incompetence, neglect of duty, or gross immorality, in such manner as may be prescribed by general laws, and unless so removed they shall continue to discharge the duties of their respective offices until their suc-

3. West Virginia Code § 19–23–3(18) (1997) defines "pari-mutuel" as:
 [A] mutuel or collective pool that can be divided among those who have contributed their wagers to one central agency, the odds to be reckoned in accordance to the collective amounts wagered upon each contestant running in a horse or dog race upon which the pool is made, but the total to be divided among the first three contestants on the basis of the number of wagers on these[.]

4. Article VII, § 8, an additional section cited by Appellant, gives the governor the exclusive pow-

er, subject to confirmation by the Senate, to appoint public officers whose appointment or election is not otherwise provided for. While this article serves to preserve the separation of powers by restricting the power of the legislature to appoint public officers, it does not seek to define the removal authority of the governor or the legislature. In addition, this section is not relevant to our discussion because West Virginia Code § 19–23–4 specifically provides for the appointment of its commissioners.

cessors are elected, or appointed and qualified.

Article IV, § 6, is not, however, the exclusive means by which public officers in appointed positions like the Racing Commission may be removed from office. Specifically referring to the governor, Article VII, § 10 of the West Virginia Constitution provides that "[t]he governor shall have power to remove any officer whom he may appoint in case of incompetency, neglect of duty, gross immorality, or malfeasance in office; and he may declare his office vacant and fill the same as herein provided in other cases of vacancy." While providing only limited grounds for removal, Article VII, § 10 applies to any executive branch public officer appointed by the governor and gives the governor an "irreducible minimum of power" to remove officers he appoints in cases of incompetency, neglect of duty, gross immorality and malfeasance. *State ex rel. Thompson v. Morton*, 140 W.Va. 207, 218, 84 S.E.2d 791, 798 (1954). Appellant suggests that the governor's power to remove members of the Racing Commission rests solely in this provision. In *Morton*, this Court specifically found that such a construction of Article VII, § 10, "would, in effect, deny the Legislature power to legislate as to all causes of removal of such officers other than those designated in Section 10, which would be in direct contravention of the provisions of Section 8 of Article IV." 140 W.Va. at 218, 84 S.E.2d at 798.

Article IV, § 8 pertains to a narrower class of appointed officers than those described in Article VII, § 10, however, it is not as restrictive in limiting the means of removing public officers from legislatively-created offices. Article IV, § 8 of the West Virginia Constitution specifically provides: "The legislature, in cases not provided for in this Constitution, shall prescribe, by general laws, the terms of office, powers, duties and compensation of all public officers and agents, and the manner in which they shall be elected, appointed and removed."

In creating public offices, Article IV, § 8 does not require that the Legislature choose between a term of office, and the right of the governor to remove a public officer at the governor's will and pleasure. Further, retention of appointment confirmation power in the Senate does not preclude a concurrent statutory provision for will and pleasure removal by the governor. Accordingly, this Court has held that "there can be little doubt that the Legislature has power to create an office and provide that a person appointed thereto may serve for a fixed term unless sooner removed by the Governor, as it has done by ... Code, 6–6–4." *Morton,* 140 W.Va. at 218–19, 84 S.E.2d at 798.

This Court has held that constitutional provisions, concerning the same subject matter, must be read together. *White v. Manchin,* 173 W.Va. 526, 536, 318 S.E.2d 470, 480 (1984). In *Morton,* we found that Article VII, § 10 and Article IV, § 8 "are required to be read together for the purpose of determining the constitutional intent as to the entire subject of removal as to such [public] officers." 140 W.Va. at 218, 84 S.E.2d at 798. The plain language of Article IV, § 8 grants the Legislature the authority to fix the term of an office, not provided for in the Constitution, prescribe the powers duties and compensation and the manner of election, appointment and removal. Accordingly, the governor's removal power does not solely rest in the provisions enunciated in Article VII, § 10, as Appellant suggests. Clearly, Article IV, § 8 empowers the Legislature to provide for other means of removal of public officers.

Contrary to Appellant's first assignment of error, the members of the Racing Commission have no special status based on their quasi-judicial functions, either through statutory or common law, granting them protection from the general removal law which allows the removal of appointed officials at a governor's will and pleasure. In creating the Racing Commission, the Legislature created no internal removal provision [5] limiting the grounds upon which appointed Racing Com-

5. "Internal removal provision" refers to an act of the Legislature which creates a public office and specifically includes a provision as part of that act which defines the grounds upon which an appointee to the office may be removed.

mission commissioners may be removed from office. West Virginia Code § 19–23–4(b) specifically provides, in pertinent part, that "[t]he members of the racing commission in office on the effective date of this article [July 25, 1969] shall, unless removed by the governor after the effective date of this article, continue to serve until their terms expire and until their successors have been appointed and have qualified."

In the absence of an internal removal provision, the appointment provisions contained within West Virginia Code § 19–23–4(b), must be read, *in pari materia,* with West Virginia Code § 6–6–4, the general removal statute upon which Governor Underwood relied in removing Appellant.[6] West Virginia Code § 6–6–4 is a legislative exercise of the authority granted to the Legislature pursuant to Article IV, § 8 of the West Virginia Constitution. As explained above, this constitutional provision allows the Legislature to prescribe the terms of office of all public officers and the manner in which they shall be removed. No exceptions are found in the language of Article IV, § 8, or in West Virginia Code § 6–6–4 for public officers who perform a quasi-judicial function in addition to their administrative functions.

■ This Court has specifically upheld the constitutionality of West Virginia Code § 6–6–4 in its application to members of the West Virginia Turnpike Commission. In syllabus point four of *Morton,* we held that "Code, 6–6–4, is not unconstitutional as being in conflict with Section 10 of Article VII, Section 1 of Article V, or Section 1 of Article VI of the State Constitution.[7]" *Morton,* 140 W.Va. at 207, 84 S.E.2d at 793 (footnote added).

6. See section IV of this opinion for a discussion of how West Virginia Code § 19–23–4(b) and West Virginia Code § 6–6–4 relate to the same subject matter.

7. Article VI, § 1 of the West Virginia Constitution, which states that "[t]he legislative power shall be vested in a senate and house of delegates" was not listed in Appellant's assignment of error as one of the constitutional provisions allegedly violated by West Virginia Code § 6–6–4. Article V, § 1 of the West Virginia Constitution, the separation of powers doctrine, is discussed later in this section of the opinion.

*Morton* involved the removal of two Turnpike Commission members by Governor William Marland prior to the end of their terms of office.[8] As in the instant case, the statutory basis of the Governor's action was found in West Virginia Code § 6–6–4. Both commissioners had been appointed by Governor Marland's predecessor for specified terms and their terms had not expired. The issue before this Court in *Morton* was whether the governor had the authority to remove appointed Turnpike Commissioners during their term of office. This Court expressly rejected the contention by the commissioners that the governor's removal powers were limited to those provided in Article VII, § 10 of the West Virginia Constitution. Instead, the Court found that West Virginia Code § 6–6–4 is constitutional. *Morton,* 140 W.Va. at 218, 84 S.E.2d at 798.

This Court recognized in *Morton* that the Legislature often creates offices in reliance upon the general removal provisions found in West Virginia Code § 6–6–4 and specifically explained that:

The Act of the Legislature in question carried into the 1931 Code, was first enacted as Chapter 94 by the 1921 Legislature. Since its enactment no fewer than fifteen different Legislatures have enacted laws relating to the appointment of officers for fixed terms, *without making any provision for their removal from public office.* These Legislatures have undoubtedly relied on the provisions of Code, 6–6–4, as covering such removals. If that provision does not do so, those Legislatures have clearly failed to obey the command of the

8. The statute at issue in *Morton* was West Virginia Code § 16A–17–3 (1949), which provided for the appointment of the Turnpike commissioners. Pursuant to that statute, the Turnpike Commission was to be composed of five members, one being the State Road Commissioner, and other four members were to be appointed by the governor, by and with the advice and consent of the senate. Their terms of office were staggered, "the term of each such member to be designated by the governor, and until their respective successors shall be duly appointed and qualified." *Morton,* 140 W.Va. at 209–10, 84 S.E.2d at 794.

people, through the Constitution, to provide for such removal by "general laws." *Morton,* 140 W.Va. at 220, 84 S.E.2d at 799.

Appellant argues that *Morton* is distinguishable from the instant matter because the Turnpike Commission was purely executive and administrative in nature, with no rule-making or judicial hearing authority. We must reject this argument because, as we explained earlier, the deciding of contested cases or the delegation of some quasi-judicial functions to an administrative agency does not transform that agency into a court. *Huber,* 129 W.Va. at 217, 40 S.E.2d at 22.

Appellant also argues that *Morton* must be read in conjunction with this Court's decision in *State ex rel. Fox v. Brewster,* 140 W.Va. 235, 84 S.E.2d 231 (1954), which was decided on the same day. In the *Brewster* case, this Court held that a member of the West Virginia Board of Education appointed for a fixed term, and whose appointment was confirmed by the Senate, could not be removed by a succeeding governor. The difference in the outcomes between the *Morton* and the *Brewster* cases has nothing to do with the issues of quasi-judicial function or fixed terms. Instead, differing results are attributable to the internal removal provision in the board of education statute which expressly limited the governor's power of removal.[9]

The key issue in *Brewster* was whether the State Board of Education's statute's removal provision precluded removal of an appointee after appointment and before Senate confirmation. This Court held in syllabus point twelve of *Brewster* that:

> Where the term of a member of the West Virginia Board of Education has expired during a legislative interim, and the governor has made an interim appointment of a member of the board for the ensuing term, the appointee becomes a *de jure* member of the board for the whole of the ensuing term, subject to confirmation by the Senate, and such appointee cannot be removed from his *de jure* office by the

governor, unless the provisions of Section 1, Article 2, Chapter 72, Acts of the Legislature, Regular Session, 1947, amending and reenacting Code, 18–2–1, providing for, specifying and limiting the grounds for the removal of a member of the West Virginia Board of Education by the governor, and the manner of such removal, have been complied with.

140 W.Va. at 238, 84 S.E.2d at 234. We thus determined that the governor could only remove the appointee for the causes expressly stated in the internal removal provision found West Virginia Code § 18–2–1.

Appellant contends additionally that West Virginia Code § 6–6–4 is invalid because it attempts to confer judicial and legislative power upon the executive branch to remove a quasi-judicial or quasi-legislative public officer in violation of Article V, § 1 of the West Virginia Constitution. Article V, § 1 provides that "[t]he legislative, executive and judicial departments shall be separate and distinct, so that neither shall exercise the powers properly belonging to either of the others . . . ."

■ We find no merit in this contention. While the West Virginia Constitution contemplates the independent operation of all three branches of government, "there can be no doubt that the people, through their Constitution, may authorize one of the departments to exercise powers otherwise rightfully belonging to another department." *Morton,* 140 W.Va. at 223, 84 S.E.2d at 800–01. Because we have determined that the Constitution, in Article VII, § 10, has vested in the governor the "irreducible minimum" power with reference to certain public officers, and that the Legislature was vested with the power in Article IV, § 8 to determine "the remaining power of removal, as it did in enacting Code, 6–6–4, it necessarily follows that the Governor was exercising a power 'properly belonging' to him" when he removed Appellant as a racing commissioner. *Morton,* 140 W.Va. at 223, 84 S.E.2d at 801.

9. West Virginia Code § 18–2–1, as amended and reenacted by Section 1, Article 2, Chapter 72, Acts of the Legislature, Regular Session, 1947, specifically provided that no member of the West Virginia Board of Education may be removed by

the governor except for official misconduct, incompetence, neglect of duty or gross immorality, and then only pursuant to the law for the removal by the governor of state elective officers. *Brewster,* 140 W.Va. at 241, 84 S.E.2d at 236.

■ Accordingly, we hold today that West Virginia Code § 6–6–4, relating to the removal of certain officers by the governor, is not unconstitutional as being in violation of Article IV, § 6; Article VII, § 10; Article IV, § 8; and Article V, § 1 of the West Virginia Constitution, when such statutory provision is used by the governor as a legal basis to remove a member of the West Virginia Racing Commission. Accordingly, the lower court did not err in denying the Appellant's writ as it relates to the constitutionality of the statute.

Appellant points to several cases from other jurisdictions as support for the proposition that a public officer who performs a quasi-judicial function and is appointed to a fixed term cannot be removed at the will and pleasure of the chief executive.[10] Close examination of these authorities demonstrates that the cases involved offices which truly were judicial in nature or where will and pleasure removal was expressly foreclosed by an internal removal provision. Appellant did not offer any cases with a constitutional provision analogous to Article IV, § 8 and a general removal statute similar to that found at West Virginia Code § 6–6–4. Accordingly, we do not find these cases persuasive.

### IV.

Appellant also contends as an assignment of error that West Virginia Code § 6–6–4 was repealed by implication with the enactment of West Virginia Code § 19–23–27 (1997).[11] Appellant contends that there is a definite conflict between West Virginia Code § 6–6–4, the general removal provision, and West Virginia Code § 19–23–4(b), the provision for the appointment of the racing commissioners. On the other hand, Governor Underwood contends that in reenacting and in periodically amending West Virginia Code § 19–23–4, the Legislature has not repealed, either by express or implied terms, the governor's will and pleasure removal authority over racing commissioners found in West Virginia Code § 6–6–4.

■ It is well-established in this jurisdiction that "[r]epeal of a statute by implication is not favored in law." Syl. Pt. 1, *State ex rel. City of Wheeling v. Renick,* 145 W.Va. 640, 116 S.E.2d 763 (1960). In resolving the question of whether one statute has by implication repealed another statute, we have applied the following rule:

> " 'A general statute, which does not use express terms or employ words which manifest a plain intention so to do, will not repeal a former statute dealing with a particular subject, and the two statutes will operate together unless the conflict between them is so real and irreconcilable as to indicate a clear legislative purpose to repeal the former statute.' Point 6, syllabus, *Harbert v. The County Court of Harrison County,* 129 W.Va. 54 [39 S.E.2d 177 (1946) ]." Syllabus Point 1, *Brown v. Civil Service Comm'n,* 155 W.Va. 657, 186 S.E.2d 840 (1972).

Syl. Pt. 2, *Trumka v. Clerk of the Circuit Court of Mingo County,* 175 W.Va. 371, 332 S.E.2d 826 (1985).

Appellant contends that West Virginia Code § 19–23–4(b) specifically requires that the commissioners be appointed to the Racing Commission by the governor for fixed periods of four years. Appellant contends that this requirement is absolutely in conflict with the provisions of West Virginia Code § 6–6–4, which states that the governor can treat all appointees as at will and pleasure when the Legislature has deemed otherwise. According to Appellant, because these two statutes are in conflict, West Virginia Code § 6–6–4 must be found to have been repealed by implication by the passage of West Virginia Code § 19–23–27, the general repealer

---

10. *See, e.g., State ex rel. Nagle v. Sullivan,* 98 Mont. 425, 40 P.2d 995 (1935); *Humphrey's Executor v. United States,* 295 U.S. 602, 55 S.Ct. 869, 79 L.Ed. 1611 (1935); *Wiener v. United States,* 357 U.S. 349, 78 S.Ct. 1275, 2 L.Ed.2d 1377 (1958); *Bowers v. Pennsylvania Labor Relations Bd.,* 402 Pa. 542, 167 A.2d 480 (1961); *Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 2 L.Ed. 60 (1803).

11. West Virginia Code § 19–23–27 provides that "[a]ll acts, whether general or local, public or private, inconsistent with the provisions of this article are hereby repealed to the extent of their inconsistency."

section of the West Virginia Racing Commission Act.

We find, however, that there is no conflict between these two statutes. West Virginia Code § 6-6-4 speaks specifically to the governor's authority to remove appointed officers. West Virginia Code § 19-23-4(b) provides for the governor to appoint commissioners to the Racing Commission. In fact, the statutory language of West Virginia Code § 19-23-4(b) references the authority of the governor to remove an appointee prior to the expiration of his term. Specifically, this section provides that "[t]he members of the racing commission in office on the effective date of this article [July 25, 1969] shall, *unless removed by the governor* after the effective date of this article, continue to serve until their terms expire and until their successors have been appointed and have qualified." *Id.* (emphasis added). Neither West Virginia Code § 19-23-27, nor West Virginia Code § 19-23-4(b), express a specific intent to repeal the governor's will and pleasure removal authority.

"[T]he courts will not adjudge a statute to have been repealed by implication unless a legislative intent to repeal or supersede the statute plainly and clearly appears." *Morton*, 140 W.Va. at 212, 84 S.E.2d at 795. "To warrant the adjudication of the repeal of a statute by implication there must exist such a positive repugnancy between the statute claimed to be repealed and the subsequent enactment that they cannot, by any reasonable hypothesis, be consistently reconciled." *Id.* at 207, 84 S.E.2d at 791, syl. pt. 2. Because we find that the governor's general removal authority, West Virginia Code § 6-6-4, is not in conflict with the governor's power to appoint the racing commissioners, pursuant to West Virginia Code § 19-23-4(b), we hold today that West Virginia Code § 6-6-4, relating to the removal of certain officers by the governor, was not impliedly repealed by West Virginia Code § 19-23-27, the general repealer statute found within the West Virginia Racing Commission Act, West Virginia Code §§ 19-23-1 to 19-23-29 (1997).

Finding no conflict between these code sections, we must determine how the Legislature intended the governor's general removal authority to interrelate with the specific provisions for the appointment of the racing commissioners. We have held that " '[s]tatutes which relate to the same subject matter should be read and applied together so that the Legislature's intention can be gathered from the whole of the enactments.' Syl. Pt. 3, *Smith v. State Workmen's Compensation Comm'r*, 159 W.Va. 108, 219 S.E.2d 361 (1975)." Syl. Pt. 1, *State ex rel. Hall v. Schlaegel*, 202 W.Va. 93, 502 S.E.2d 190 (1998). We have also recognized that:

> " 'A statute should be so read and applied as to make it accord with the spirit, purposes and objects of the general system of law of which it is intended to form a part; it being presumed that the legislators who drafted and passed it were familiar with all existing law, applicable to the subject matter, whether constitutional, statutory or common, and intended the statute to harmonize completely with the same and aid in the effectuation of the general purpose and design thereof, if its terms are consistent therewith.' Syllabus Point 5, *State v. Snyder*, 64 W.Va. 659, 63 S.E. 385 (1908)." Syl. Pt. 1, *State ex rel. Simpkins v. Harvey*, 172 W.Va. 312, 305 S.E.2d 268 (1983), *superseded by statute on other grounds as stated in State ex rel. Hagg v. Spillers*, 181 W.Va. 387, 382 S.E.2d 581 (1989).

Syl. Pt. 2, *State ex rel. Hall v. Schlaegel*, 202 W.Va. 93, 502 S.E.2d 190 (1998). Reading the two statutory provisions together, they simply mean that the term of a commissioner of the Racing Commission shall be for four years, unless the governor shall exercise his general removal authority to remove a commissioner pursuant to West Virginia Code § 6-6-4.

Based upon the foregoing, we affirm the order of the Circuit Court of Kanawha County denying the writ.

Affirmed.

Chief Justice DAVIS, Justice MAYNARD and Judge JOHN HENNING, sitting by special assignment, join the Opinion of the Court.

Justice McCUSKEY, deeming himself disqualified, did not participate in the decision in this case.

Justice STARCHER dissents.

Justice McGRAW did not participate in the decision of this case.