559 S.E.2d 45

**In re: William F. SORSBY, III, Debtor.**

**Martin P. Sheehan, Trustee, Plaintiff,**

**v.**

**WFS Financial, Inc., Defendant.**

**and**

**Ronald Burton Squires and Marsha Renea Squires, Debtors,**

**Martin P. Sheehan, Trustee, Plaintiff,**

**v.**

**Mercedes–Benz Credit Corp., Defendant.**

**No. 29697.**

Supreme Court of Appeals of West Virginia.

Submitted Oct. 3, 2001.

Decided Dec. 7, 2001.

Dissenting Opinion of Chief Justice McGraw Jan. 14, 2002.

Martin P. Sheehan, Sheehan & Nugent, PLLC, Wheeling, for the Trustee of the Estate of William Sorsby, III, et al.

Thomas L. Canary, Jr., Mapother & Mapother, Louisville, Kentucky, James D. Keffer, Mapother & Mapother, Huntington, for Defendant Mercedes–Benz Credit Corp.

James C. Gardill, Denise Knouse–Snyder, Bryan J. Warren, Phillips, Gardill, Kaiser & Altmeyer, Wheeling, Julia A. Chincheck, Sandra M. Murphy, Bowles, Rice, McDavid, Graff & Love, PLLC, Charleston, for Amici Curiae Westbanco Bank, Inc. and The West Virginia Banker's Association.

Thomas B. Miller, James A. Byrum, Jr., Schrader, Byrd & Companion, PLLC, Wheeling, for the Debtor, William F. Sorsby, III and Attorneys for the Defendant, WFS Financial, Inc.

Daniel T. Booth, Booth & McCarthy, Bridgeport, for Amicus Curiae Volvo Commercial Finance LLC the Americas, f/k/a/ Volvo Truck Finance North America.

DAVIS, Justice.

This case involves a question certified from the United States Bankruptcy Court for the Northern District of West Virginia that asks us to determine the proper treatment of motor vehicle liens perfected in states other than West Virginia in light of two apparently conflicting West Virginia statutes, W. Va. Code § 17A–4A–14 (1961) (Repl.Vol.2000), which is a provision of the West Virginia Motor Vehicle Code, and W. Va.Code § 46–9–103(2) (1996) (Supp.2000), which is part of the West Virginia Uniform Commercial Code (hereinafter "UCC"). We conclude that W. Va.Code § 46–9–103(2) controls.

I.

## FACTUAL AND PROCEDURAL HISTORY

Although our answer to the question herein certified is expected to impact numerous cases now pending or soon to be filed in the United States Bankruptcy Court for the Northern District of West Virginia, the affected cases fall into two basic factual scenarios, which are represented by the two cases presented for our consideration in answering the question.

### A. Non–Resident moving to West Virginia and Failing to Obtain West Virginia Title

One type of case involves a non-resident of West Virginia who, after granting a security interest in a motor vehicle, moves into this

state and fails to obtain a West Virginia certificate of title for the vehicle. This scenario is represented by a case involving debtor William Sorsby. Mr. Sorsby obtained a 1995 Monte Carlo while living in Ohio. In connection with this purchase, Mr. Sorsby granted a security interest in the automobile to WFS Financial, Inc. (hereinafter "WFS"). The lien was recorded on the Ohio motor vehicle certificate of title, and there is no dispute that this lien is validly perfected under the laws of Ohio. Mr. Sorsby then moved to West Virginia in December 1999. Although he brought the Monte Carlo automobile with him, he did not retitle or attempt to register the vehicle in this state. On July 20, 2000, Mr. Sorsby filed for relief, under

Chapter 7 of the Bankruptcy Code, in the United States Bankruptcy Court for Northern District of West Virginia. Martin P. Sheehan was appointed as trustee. Mr. Sheehan (hereinafter "the Trustee"), asserting himself in his capacity as statutory lien creditor,[1] then filed an adversary proceeding against WFS alleging that WFS had failed to perfect its interest in the Monte Carlo within three months of removal of the vehicle to West Virginia as required by W. Va.Code § 17A–4A–14.[2] The Trustee contended that WFS's failure to comply with W. Va.Code § 17A–4A–14 caused its lien to be void as a matter of law as to the Trustee. WFS countered that W. Va.Code § 46–9–103(2)[3] ap-

---

**1.** *See* 11 U.S.C. § 544 (2000 ed.) and W. Va.Code § 46–9–301(3) (1995) (Supp.2000).

**2.** W. Va.Code § 17A–4A–14 (1961) (Repl.Vol. 2000) states:

As to bona fide purchasers for value or lien creditors without notice, the provisions of this article shall not be construed so as to invalidate or render void any lien or encumbrance placed upon a vehicle, by the voluntary act of the owner, in a transaction consummated before the vehicle is brought into this State, and before the same is subject to registration in the State of West Virginia, and before the application for a West Virginia certificate of title is required so long as such a lien or encumbrance has been properly recorded according to the laws of the jurisdiction in which it was created so as to be valid against bona fide purchasers for value or lien creditors without notice and so long as such lien or encumbrance is of such kind, nature and character as the law of this State would otherwise protect against such purchasers and lien creditors: Provided, however, That after such vehicle is brought into this State and after it is required to be registered and titled in this State, such lien or encumbrance as in this section described shall be void as to any purchaser for value or lien creditor, who, in either case, without notice of such lien or encumbrances, purchases such vehicle or acquires by attachment, levy or otherwise a lien thereupon, unless such lienholder, within three months after the removal of such vehicle into this State or within ten days after such lienholder received notice of such removal, whichever period of time is least, shall, in the manner set forth in section two [§ 17A–4A–2] of this article file application with the department in which case the department shall proceed as in section two of this article.

**3.** W. Va.Code § 46–9–103(2) (1996) (Supp.2000) states in relevant part:

(2) *Certificate of title.*

(a) This subsection applies to goods covered by a certificate of title issued under a statute of this state or of another jurisdiction under the law of which indication of a security interest on the certificate is required as a condition of perfection.

(b) Except as otherwise provided in this subsection, perfection and the effect of perfection or nonperfection of the security interest are governed by the law (including the conflict of laws rules) of the jurisdiction issuing the certificate until four months after the goods are removed from that jurisdiction and thereafter until the goods are registered in another jurisdiction, but in any event not beyond surrender of the certificate. After the expiration of that period, the goods are not covered by the certificate of title within the meaning of this section.

Numerous provisions of the West Virginia UCC have been revised, effective July 1, 2001. W. Va.Code §§ 46–9–103(2)(a) and (b) have been revised and recodified as W. Va.Code § 46–9–303 (2000) (Repl.Vol.2001). This new provision states:

(a) *Applicability of section.*—This section applies to goods covered by a certificate of title, even if there is no other relationship between the jurisdiction under whose certificate of title the goods are covered and the goods or the debtor.

(b) *When goods covered by certificate of title.*—Goods become covered by a certificate of title when a valid application for the certificate of title and the applicable fee are delivered to the appropriate authority. Goods cease to be covered by a certificate of title at the earlier of the time the certificate of title ceases to be effective under the law of the issuing jurisdiction or the time the goods become covered subsequently by a certificate of title issued by another jurisdiction.

(c) *Applicable law.*—The local law of the jurisdiction under whose certificate of title the goods are covered governs perfection, the effect of perfection or nonperfection, and the

plied and that its perfected Ohio lien remained good against the Trustee. The Trustee asked that a question be certified to this Court to allow us to determine which of these two statutes was controlling in resolving this dispute. The bankruptcy court agreed and has taken the adversary proceeding between the Trustee and WFS under advisement pending this Court's answer to the question certified.

## B. *West Virginia Resident Titling Automobile in Another Jurisdiction*

The second scenario involves a West Virginia resident who titles his or her motor vehicle in a jurisdiction other than West Virginia, an act that is prohibited by West Virginia law.[4] In the representative case, Ronald Squires, a resident of Buckhannon, West Virginia, purchased, in March 1999, a used 1995 Freightliner tractor (used to pull trailers over the highways). To purchase the tractor, Mr. Squires entered into a retail installment contract with SelecTrucks of Atlanta. SelecTrucks assigned the retail installment agreement to Mercedes–Benz Credit Corporation (hereinafter "Mercedes–Benz") on the same day. Mercedes–Benz and Ronald Squires then applied for a certificate of title in Oklahoma. The application identifies the owner as Ronald B. Squires of Buckhannon, West Virginia, and the secured party as Mercedes–Benz. Oklahoma issued the certificate of

title to Ronald B. Squires and identified Mercedes–Benz as having a first lien or security interest on the vehicle.[5]

On October 8, 1999, Ronald B. Squires and Marsha Renea Squires filed for relief under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for Northern District of West Virginia. Mr. Sheehan was appointed as trustee. The Trustee, asserting himself in his capacity as statutory lien creditor,[6] then filed an adversary proceeding against Mercedes–Benz seeking to set aside as void the security interest in the Freightliner tractor. Mercedes–Benz alleged that the lien was validly perfected under Oklahoma law and that W. Va.Code § 46–9–103(2) protects the lien until it is rerecorded.

The parties filed motions for summary judgment and, on February 7, 2001, the bankruptcy court entered judgment for Mercedes–Benz. The Trustee filed a motion to reconsider bringing to the bankruptcy court's attention W. Va.Code § 17A–4A–14. Because this statute differed from the law of the states relied upon by the bankruptcy court in granting summary judgment to Mercedes–Benz,[7] the court agreed to reconsider its earlier decision and determined to certify a question regarding the conflict between

priority of a security interest in goods covered by a certificate of title from the time the goods become covered by the certificate of title until the goods cease to be covered by the certificate of title.

4. See W. Va.Code §§ 17A–3–1 (1999) (Repl.Vol. 2000) (failure to properly register vehicle and obtain certificate of title therefor is a misdemeanor offense), and 17A–3–2 (1999) (Repl.Vol.2000) (delineating types of vehicles subject to registration and certificate of title provisions). Mercedes–Benz disputes that there was anything illegal about Mr. Squires purchase and subsequent titling of his vehicle in Oklahoma. See *infra* note 5. The question of whether Mr. Squires' actions were illegal is not before this Court and will not be addressed.

5. It was speculated by the bankruptcy court that the purpose for titling the vehicle in Oklahoma was the avoidance of West Virginia value and personal property taxes. In response, Mercedes–Benz asserts that West Virginia is a member of the International Registration Plan, a reciprocal

agreement among various states that includes payment of certain taxes, registration, licensing and other fees. As a consequence of this arrangement, Mercedes–Benz contends, Mr. Squires' vehicle was not required to be registered in West Virginia. Moreover, Mercedes–Benz submits that the State of Oklahoma remits registration and personal property taxes to the State of West Virginia. The nature of the International Registration Plan and its impact as to Mr. Squires' actions and the amount of taxes he may owe to the State of West Virginia are matters that are not represented in the record submitted in connection with the certified question before us. Consequently, these issues are not properly before this Court and will not be addressed.

6. See *supra* note 1.

7. None of the cases previously relied upon by the bankruptcy court involved a statute, such as W. Va.Code § 17A–4A–14, directing that if a vehicle was not registered the lien on the certificate of title will be *voided* as to any subsequent lien creditor without notice.

W.Va. Code §§ 46–9–103(2) and 17A–4A–14 to this Court.

## II.

### CERTIFIED QUESTION

The question certified by the bankruptcy courts asks

> [w]hether section 17A–4A–14 or section 46–9–103(2) of the West Virginia Code is controlling as to the perfection of a motor vehicle lien originating out-of-state so as to be good against judicial lien creditors.

The bankruptcy court concluded that W. Va.Code § 46–9–103(2) is controlling where the motor vehicle is covered by a certificate of title issued pursuant to the law of another jurisdiction that also requires that a security interest be perfected by notation on the certificate.[8]

## III.

### STANDARD OF REVIEW

■ "This Court undertakes plenary review of legal issues presented by certified question from a federal district or appellate court." Syl. pt. 1, *Bower v. Westinghouse Elec. Corp.*, 206 W.Va. 133, 522 S.E.2d 424 (1999). *See also* Syl. pt. 1, *Light v. Allstate Ins. Co.*, 203 W.Va. 27, 506 S.E.2d 64 (1998) ("A de novo standard is applied by this Court in addressing the legal issues presented by a certified question from a federal district or appellate court.").

## IV.

### DISCUSSION

■ The question certified in the instant case asks us to resolve a conflict between two statutes. As the bankruptcy court noted, W. Va.Code § 17A–4A–14 "is a statutory limit on the time to perfect an out-of-state lien in West Virginia, while [W. Va.Code § ] 46–9–103(2) is a choice of law rule." Nevertheless, both statutes pertain to the continued perfec-

tion of a security interest in a vehicle that has been granted in a jurisdiction other than West Virginia.

W. Va.Code § 17A–4A–14, requires that, after a vehicle that is subject to a lien or encumbrance due to the voluntary act of the owner is brought into this state, the lien or encumbrance is void as to certain parties,[9] unless the lienholder files the requisite application with the Department of Motor Vehicles "within three months after the removal of [the] vehicle into this State or within ten days after [the] lienholder received notice of such removal, whichever period of time is least." This provision applies whether perfection is by notation on a certificate of title or by other means.

On the other hand, W. Va.Code § 46–9–103(2), which is part of the UCC, instructs that the effect of a perfected security interest in goods covered by a certificate of title obtained under the laws of a jurisdiction that requires indication of the security interest on the certificate is "governed by the law . . . of the jurisdiction issuing the certificate *until four months after the goods are removed from that jurisdiction and thereafter until the goods are registered in another jurisdiction,* but in any event not beyond surrender of the certificate." (Emphasis added). Other courts have interpreted the language "and thereafter until the goods are registered in another jurisdiction" to mean that the security interest remains governed by the law of the jurisdiction under which it was perfected indefinitely until the goods are registered in another jurisdiction or the certificate of title is surrendered. *See In re Trotter,* 264 B.R. 216, 219 (Bankr.D.Kan.2001) ("Debtor has never registered or titled the trailer in Kansas, nor has the Oklahoma title ever been surrendered. Thus, under the plain language of K.S.A. 84–9–103(2)(b), Oklahoma law determines whether CIT's security inter-

---

8. The bankruptcy court went on to suggest precisely how W. Va.Code § 46–9–103(2) should be applied to the scenario in which a West Virginia resident violates state law by titling his or her vehicle in another jurisdiction. We decline to comment on the bankruptcy court's suggestion in this regard as it raises numerous legal issues and factual questions that are not properly before this Court. See *supra* notes 4 and 5.

9. The lien or encumbrance is deemed void as to "any purchaser for value or lien creditor, who, in either case, without notice of [the] lien or encumbrances, purchases [the] vehicle or acquires by attachment, levy or otherwise a lien thereupon." W. Va.Code § 17A–4A–14.

est is still perfected."); *In re Mireles*, 255 B.R. 728, 730 (Bankr.S.D.Ohio 2000) ("Pursuant to the clear language of the statute, goods covered by a certificate of title, i.e., vehicles, remain perfected in the new jurisdiction until such time as they are registered in the new jurisdiction." (footnote omitted) (citations omitted)); *Dubis v. General Motors Acceptance Corp.*, 238 Wis.2d 608, 614, 618 N.W.2d 266, 268 (2000) ("Stated another way, a perfected security interest on an original certificate of title remains perfected for at least four months after property is moved to Wisconsin, unless the certificate is surrendered. After four months, the security interest remains perfected until registration occurs."). Thus, W. Va.Code § 46–9–103(2) provides substantially more protection to a creditor, whose motor-vehicle lien has been perfected by notation on a certificate of title issued by another jurisdiction, than does § 17A–4A–14.

 We have previously held that

"[t]he repeal of a statute by implication is not favored, and where two statutes are in apparent conflict, the Court must, *if reasonably possible,* construe such statutes so as to give effect to each." Syllabus Point 4, *State ex rel. Graney v. Sims,* 144 W.Va. 72, 105 S.E.2d 886 (1958).

Syl. pt. 5, *Lawson v. County Comm'n,* 199 W.Va. 77, 483 S.E.2d 77 (1996) (per curiam) (emphasis added).

The foregoing principle notwithstanding, insofar as W. Va.Code §§ 17A–4A–14 and 46–9–103 provide completely different time frames applicable to the continued perfection of security interests noted on a certificate of title under the laws of a jurisdiction other than West Virginia, we conceive of no way to harmonize these two conflicting provisions. Accordingly, we must determine which statute is controlling.

 There is nothing in the terms of either of the two statutes in question expressly stating which statute should govern in certain circumstances, or stating that one statute was intended to repeal the other. Consequently, with respect to the resolution of the issue presented, the statutes are vague and require our interpretation. In conducting our interpretation, we are mindful that " ' "[t]he primary object in construing a statute is to ascertain and give effect to the intent of the legislature." Syllabus Point 1, *Smith v. State Workmen's Compensation Commissioner,* 159 W.Va. 108, 219 S.E.2d 361 (1975).' Syllabus point 2, *Anderson v. Wood,* 204 W.Va. 558, 514 S.E.2d 408 (1999)." Syl. pt. 2, *Expedited Transp. Sys., Inc. v. Vieweg,* 207 W.Va. 90, 529 S.E.2d 110 (2000).

We begin our search for the legislative intent of these statutes by considering their history. In this regard, the bankruptcy court furnished us with a thorough and in depth account of the historical framework under which W. Va.Code § 17A–4A–14 was adopted. As the bankruptcy court observed,

In 1961, at the time [W. Va.Code § 17A–4A–14] was enacted, ... only sixty percent of states, including West Virginia, utilized a "Complete Certificate of Title" system, where perfection required the actual notation of a lien on a motor vehicle certificate of title.... Other jurisdictions utilized "Incomplete Certificate of Title" systems, where liens could be noted on the certificate of title only at the time of transfer of ownership.... Finally, a number of states had no mandatory certificate of title lien recordation system.... Section 17A–4A–14 applied to all liens on vehicles removed to West Virginia, regardless of whether the liens were initially created in certificate or non-certificate states. However, 17A–4A–14 was particularly important for vehicles removed to West Virginia from non-certificate states, as it was the sole method of ensuring notice of out-of-state liens and protecting the rights of out-of-state lienholders from the forty percent of non-certificate states.

(Internal citations omitted) (footnote omitted). *See* Donald K. Funnell, Note, *Secured Transactions: Certificates of Title—Delivery or Notation? The Lender's Dilemma,* 37 Okla. L.Rev. 618 (1984); Richard Alexander Burt, et al., Comment, *The California Used Car Dealer and the Foreign Lien—A study in the Conflict of Laws,* 47 Cal. L.Rev. 543 (1959). Based upon these historical details, it appears that the primary purpose for adopting § 17A–4A–14 was to ensure ade-

quate notice of out-of-state liens originating in the forty percent of states that did not require notation of a lien on a motor vehicle certificate of title.

However, as the bankruptcy court further noted, "[t]he types of lien recordation systems used by the several states changed with the adoption of the [UCC].... A movement toward complete certificate of title systems began, and today, all jurisdictions use this type of system." As noted above, complete certificate of title systems require the notation of a lien on a certificate of title.[10] Consequently, it appears that the primary difficulty W. Va.Code § 17A–4A–14 was intended to resolve no longer exists.

Turning to W. Va.Code § 46–9–103(2), it is notable that the very terms of that section express its intent to apply "to goods covered by a certificate of title issued under a statute of this state *or of another jurisdiction under the law of which indication of a security interest on the certificate is required as a condition of perfection.*" W. Va.Code § 46–9–103(2)(a) (emphasis added). Clearly, the terms of this provision demonstrate the Legislature's intent that it apply to circumstances such as those presently before us. Moreover, the general provisions of the UCC, as adopted in West Virginia, expressly state that it "shall be liberally construed and applied to promote its underlying purposes and policies." W. Va.Code § 46–1–102(1) (1963) (Repl.Vol.2001). Two of the stated purposes of the UCC are "to simplify, clarify and modernize the law governing commercial transactions," and "to make uniform the law among various jurisdictions." W. Va.Code § 46–1–102(2)(a) and (c). Plainly, these expressed purposes indicate an intent on the part of the Legislature that the UCC should govern the continued perfection a security interest noted on a certificate of title.

We find this conclusion further supported by the application of the following canon of statutory construction:

[I]t is a settled principle of statutory construction that courts presume the Legislature drafts and passes statutes with full knowledge of existing law. *See State ex rel. Smith v. Maynard,* 193 W.Va. 1, 8–9, 454 S.E.2d 46, 53–54 (1994), *citing Cannon v. University of Chicago,* 441 U.S. 677, 696–97, 99 S.Ct. 1946, 1957–58, 60 L.Ed.2d 560, 575–76 (1979); *see also Miles v. Apex Marine Corp.,* 498 U.S. 19, 32, 111 S.Ct. 317, 325, 112 L.Ed.2d 275, 291 (1990). Accordingly, when two statutes conflict, the general rule is that the statute last in time prevails as the most recent expression of the legislative will. Syl. Pt. 2, *Stamper by Stamper v. Kanawha County Bd. of Educ.,* 191 W.Va. 297, 445 S.E.2d 238 (1994); Syl. Pt. 2, *State ex rel. Dept. of Health and Human Resources, etc. v. West Virginia Public Employees Retirement System,* 183 W.Va. 39, 393 S.E.2d 677 (1990).

*West Virginia Health Care Cost Review Auth. v. Boone Mem'l Hosp.,* 196 W.Va. 326, 336, 472 S.E.2d 411, 421 (1996). W. Va.Code § 17A–4A–14 was adopted in 1961 and has not been subsequently modified. W. Va. Code § 46–9–103 was adopted two years after § 17A–4A–14, and thus, is last in time. Moreover, the provisions contained in § 46–9–103(2)(a) and (b) were recently modified and recodified in W. Va.Code § 46–9–303 (2000) (Repl.Vol.2001). This newer version of the UCC makes even more apparent the Legislature's intent that the UCC should apply to questions in multi-state transactions regarding the continued perfection of security interests in goods that are covered by a certificate of title. Indeed, W. Va.Code § 46–9–303(a) states "[t]his section applies to goods covered by a certificate of title, even if there is no other relationship between the jurisdiction under whose certificate of title the goods are covered and the goods or the debtor."

Accordingly, we hold that where a motor vehicle owned by a West Virginia resident is titled in another jurisdiction, and that juris-

---

**10.** Nevertheless, for treatment of security interests in goods that have been perfected by means other than notation on a certificate of title before being brought into this state and becoming covered by a certificate of title, see W. Va.Code § 46–9–103(2)(c). No questions regarding the extent to which this provision may conflict with W. Va.Code § 17A–4A–14 are presently before us. Moreover, we note that § 46–9–103(2)(c) was not recodified as part of the UCC statutes that became effective on July 1, 2001.

diction requires notation of a security interest on the certificate of title as a condition of perfection, the determination of the continued perfection of any lien so noted is governed by the UCC, as opposed to W. Va. Code § 17A–4A–14 (1961) (Repl.Vol.2000).

## V.

## CONCLUSION

As stated above, we concur with the determination of the United States Bankruptcy Court for the Northern District of West Virginia that the UCC controls where questions arise as to the continued perfection of a motor vehicle lien that is noted on a certificate of title issued by a jurisdiction other than West Virginia.

Certified Question Answered.

Chief Justice McGRAW dissents and reserves the right to file a dissenting opinion.

McGRAW, Cheif Justice, dissenting.

(Filed Jan. 14, 2002)

While the majority in this case presents a compelling policy argument in favor of the repeal or modification of W. Va.Code § 17A–4A–14, the fact remains that the Legislature has not seen fit to take such action, and I simply fail to discern an intent in either the text or history of the counterposed W. Va. Code § 46–9–301(2) to abrogate this more specific statute.

As the majority recognizes then quickly ignores, "[r]epeal of a statute by implication is not favored in law." Syl. pt. 1, *State ex rel. City of Wheeling v. Renick*, 145 W.Va. 640, 116 S.E.2d 763 (1960). In most circumstances, where two statutes, one general and the other more specific, conflict, the specific statute is deemed to be an exception to the more general legislation. *See* Syl. pt. 1, *UMWA by Trumka v. Kingdon*, 174 W.Va. 330, 325 S.E.2d 120 (1984) ("The general rule of statutory construction requires that a specific statute be given precedence over a general statute relating to the same subject matter where the two cannot be reconciled."). In this case § 17A–4A–14 is more specific than § 46–9–301(2), since it pertains to certif-

icates of title in the limited context of automobiles. One respected treatise states that

> [w]here one statute deals with a subject in general terms, and another deals with a part of the same subject in a more detailed way, the two should be harmonized if possible; but if there is any conflict, the latter will prevail, *regardless of whether it was passed prior to the general statute*, unless it appears that the legislature intended to make the general act controlling.

2B Norman J. Singer, *Sutherland Statutory Construction* § 51.05, at 244 (6th ed.2000) (footnotes omitted) (emphasis added).

As to whether the legislature has signaled an intent to impliedly repeal a specific statute through the adoption of a more general law, this Court stated in syllabus point two of *Trumka v. Clerk of the Circuit Court of Mingo County*, 175 W.Va. 371, 332 S.E.2d 826 (1985):

> " 'A general statute, which does not use express terms or employ words which manifest a plain intention so to do, will not repeal a former statute dealing with a particular subject, and the two statutes will operate together unless the conflict between them is so real and irreconcilable as to indicate a clear legislative purpose to repeal the former statute.' Point 6, syllabus, *Harbert v. The County Court of Harrison County*, 129 W.Va. 54 [39 S.E.2d 177 (1946) ]." Syllabus Point 1, *Brown v. Civil Service Comm'n*, 155 W.Va. 657, 186 S.E.2d 840 (1972).

*See also* syl. pt. 7, *Rice v. Underwood*, 205 W.Va. 274, 517 S.E.2d 751 (1998).

I simply fail to discern a conflict "so real and irreconcilable as to indicate a clear legislative purpose to repeal [§ 17A–4A–14]." By departing from the more forgiving provisions of the UCC, the Legislature may just as conceivably have intended that the rigid 30–day period imposed by § 17A–4A–14 should promote compliance with other regulatory and taxing requirements linked to automobile titling and registration. *See, e.g.,* 1957 W. Va. Acts, Reg. Sess., ch. 110 (requiring proof of payment of personal property taxes as prerequisite for vehicle registration) (codified as amended at W. Va.Code 17A–3–3a (2001)); 1951 W. Va. Acts, Reg. Sess., ch. 129, art. 3,

§ 4 (imposing two-percent privilege tax on obtaining certificate of title) (codified as amended at W. Va.Code § 17A–3–4(b) (2000)).

Thus, in my view the majority in this case erred by finding that § 17A–4A–14 was impliedly repealed by the adoption of the UCC. I therefore respectfully dissent.