624 S.E.2d 790

**In re Petition of Robert A. PARSONS for Restoration of Civil Rights.**

**No. 32662.**

Supreme Court of Appeals of West Virginia.

Submitted: Oct. 5, 2005.

Filed: Nov. 29, 2005.

William C. Gallagher, Esq., Cassidy, Myers, Cogan, Voegelin & Tennant, Wheeling, for the Appellant.

Darrell V. McGraw, Jr., Esq., Attorney General, Dawn E. Warfield, Esq., Deputy Attorney General, Charleston, for the Appellee.

Justice MAYNARD delivered the Opinion of the Court.

MAYNARD, Justice.

Appellant, Robert Adam Parsons, appeals the July 19, 2004, order of the Circuit Court of Ohio County that denied Appellant's petition to regain the ability to possess a firearm based on the court's finding that the grant of such relief would violate federal law. For

the reasons that follow, we affirm the circuit court's order.

## I.

## FACTS

Appellant was indicted for "wanton endangerment involving a firearm" after he allegedly pointed a handgun at his girlfriend, Kristin Conrad, and cocked the gun's hammer; "domestic battery" for allegedly causing physical harm to his girlfriend by holding her by both arms and shoving her onto a couch; and "battery" on a friend of Ms. Conrad's, Judith Thompson. At the time of the offense giving rise to these indictments, Appellant was a police officer with the Bethlehem, West Virginia Police Department and a part-time police officer with the town of Yorkville, Ohio. Appellant entered a *nolo contendere* plea to domestic assault and was sentenced to six months probation. As a specific term of Appellant's probation, and in accordance with W.Va.Code § 61–7–7(a)(8) (2004), Appellant was not permitted to "use or possess any firearms or lethal weapons."

After Appellant's probationary period expired, he filed a petition pursuant to W.Va. Code § 61–7–7(c) in the Circuit Court of Ohio County to regain the ability to possess a firearm. Subsequent to a hearing on the matter, the circuit court dismissed Appellant's petition after finding that the grant of the relief requested would violate federal law. Appellant now appeals this order.

## II.

## STANDARD OF REVIEW

■ Because this case involves the interpretation of a federal statute, this Court's standard of review is *de novo*. *See* Syllabus Point 1, *Chrystal R.M. v. Charlie A. L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995) ("Where the issue on an appeal from the circuit court is clearly ... involving an interpretation of a statute, we apply a *de novo* standard of review").

## III.

## DISCUSSION

■ The sole issue before us is whether the circuit court erred in dismissing Appellant's petition to regain his ability to possess a firearm. We find that it did not. As noted above, Appellant's petition was filed pursuant to W.Va.Code § 61–7–7(c) which provides:

Any person prohibited from possessing a firearm by the provisions of subsection (a) of this section may petition the circuit court of the county in which he or she resides to regain the ability to possess a firearm and if the court finds by clear and convincing evidence that the person is competent and capable of exercising the responsibility concomitant with the possession of a firearm, the court may enter an order allowing the person to possess a firearm if such possession would not violate any federal law.

The circuit court denied the relief sought by Appellant after finding that Appellant's possession of a firearm would violate the Gun Control Act of 1968 which provides that a person convicted of a misdemeanor crime of domestic violence is prohibited from, *inter alia*, possessing a firearm. Specifically, according to 18 U.S.C. § 922(g)(9),

It shall be unlawful for any person -

who has been convicted in any court of a misdemeanor crime of domestic violence,

to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

The circuit court concluded that Appellant's conviction of domestic assault constitutes a conviction of a misdemeanor crime of domestic violence under the federal statute so that Appellant is now prohibited from possessing a firearm.[1]

Appellant challenges the circuit court's conclusion on several grounds. First, Appel-

---

1. This Court has recognized that "[o]nce convicted, whether as a result of a plea of guilty, *nolo contendere*, or ... [trial], convictions stand on the same footing." *State v. Evans*, 203 W.Va. 446, 450, 508 S.E.2d 606, 610 (1998), *quoting United States v. Williams*, 642 F.2d 136, 139 (5th Cir. 1981).

lant cites the language of 18 U.S.C. § 921(a)(33)(B)(ii), which states:

> A person shall not be considered to have been convicted of such an offense for purposes of this chapter if the conviction has been expunged or set aside, or is an offense for which the person has been pardoned or has had civil rights restored (if the law of the applicable jurisdiction provides for the loss of civil rights under such an offense) unless the pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.

According to Appellant, the restoration exception in the above provision applies to him so that restoration of his civil rights would only violate federal law if the restoration order specifically denied firearm or ammunition possession.[2] We reject this argument.

By its plain terms, 18 U.S.C. § 921(a)(33)(B)(ii) provides that a person shall not be considered to be convicted of such an offense "if the conviction ... is an offense for which the person has ... had civil rights restored (if the law of the applicable jurisdiction provides for the loss of civil rights under such an offense)." Federal case law indicates that a person who has not lost his or her civil rights cannot have them "restored" for the purpose of 18 U.S.C. § 921(a)(33)(B)(ii). In *United States v. Jennings*, 323 F.3d 263 (4th Cir.2003), *cert. denied*, 540 U.S. 1005, 124 S.Ct. 531, 157 L.Ed.2d 412 (2003), the defendant was convicted in the United States District Court for the District of South Carolina of possessing a firearm after a conviction in state court of a misdemeanor crime of domestic violence. Because the defendant was not incarcerated for his misdemeanor domestic violence conviction, he lost none of his civil rights under South Carolina law. The defendant appealed the firearm possession conviction. The Fourth Circuit framed the issue as "whether a person convicted of a [misdemeanor crime of domestic violence] but never stripped of his civil rights under state law is thereafter subject to prosecution under 18 U.S.C. § 922(g)(9)." *Jennings*, 323 F.3d at 266. The court noted that it was the defendant's

contention that he could not be convicted of violating 18 U.S.C. § 922(g)(9) because, regarding his domestic violence conviction, his civil rights, even though they had never been taken away, were nevertheless "restored" under 18 U.S.C. § 921(a)(33)(B)(ii). The court gave short shrift to this argument, reasoning as follows:

> As the court noted in *McGrath v. United States*, 60 F.3d 1005 (2d Cir.1995) [*cert. denied*, 516 U.S. 1121, 116 S.Ct. 929, 133 L.Ed.2d 857 (1996)], the "word 'restore' means 'to give back (as something lost or taken away).'" *Id.* at 1007 (quoting *Webster's Third New International Dictionary* 1936 (1976)). And, the "'restoration' of a thing never lost or diminished is a definitional impossibility." *McGrath*, 60 F.3d at 1007. Because Jennings' civil rights were never taken away, it is impossible for those civil rights to have been "restored."

*Jennings*, 323 F.3d at 267.

The *Jennings* court then addressed the defendant's argument that it is absurd to treat those misdemeanants who never lost their civil rights more harshly than those misdemeanants who temporarily lost their civil rights while incarcerated and had them restored upon release from incarceration. In answering the question whether a literal application of the word "restored" to the defendant produces an absurd result, the court carefully reviewed case law from other federal circuit courts and found the decisions reached by four of these courts, *McGrath, supra, United States v. Smith*, 171 F.3d 617 (8th Cir.1999), *United States v. Hancock*, 231 F.3d 557 (9th Cir.2000), *cert. denied*, 532 U.S. 989, 121 S.Ct. 1641, 149 L.Ed.2d 500 (2001), and *United States v. Barnes*, 295 F.3d 1354 (D.C.Cir.2002), to be persuasive. Thus, the court concluded that,

> the literal application of the word "restored" as contained in 18 U.S.C. § 921(a)(33)(B)(ii) to Jennings, *i.e.*, requiring him to demonstrate that his civil rights were lost and restored, does not produce an absurd result. First, as recognized by the *McGrath, Smith, Hancock*, and *Barnes* courts, Congress knew when it enacted the restoration exceptions of 18 U.S.C.

---

**2.** Appellant does not claim that his domestic assault conviction has been expunged, set aside, or is one for which he has been pardoned.

§§ 921(a)(20) and 921(a)(33)(B)(ii) that the several states had drastically different laws governing the restoration of civil rights and that drastically different, perhaps anomalous, results were bound to occur. However, Congress intentionally keyed the restoration of civil rights to state law so it follows that Congress consciously made the decision to accept anomalous results—like· a result that favors incarcerated midemeanants over misdemeanants that were not incarcerated. Second, Jennings has other avenues he can pursue to fall within the restoration exception of 18 U.S.C. § 921(a)(33)(B)(ii); namely, pardon and expungement. Third, to accept Jennings' position would allow the restoration exception of 18 U.S.C. § 921(a)(33)(B)(ii) to swallow the rule. Under Jennings' formulation, all persons who are convicted of a [misdemeanor crime of domestic violence] and who do not lose their civil rights would be permitted to possess a firearm. Such a construction would allow almost all persons convicted of a [misdemeanor crime of domestic violence] to possess a firearm, thereby substantially undercutting the federal policy aimed at trying to take firearms out of the hands of persons convicted of a [misdemeanor crime of domestic violence].

*Jennings*, 323 F.3d at 274 (citations omitted).[3]

We concur with the reasoning in *Jennings* and the cases on which it relies. Therefore, we hold that a person who has been convicted of a misdemeanor crime of domestic violence and who does not lose his or her civil rights as a result of the conviction cannot

have his or her civil rights "restored" for the purpose of 18 U.S.C. § 921(a)(33)(B)(ii) so as to fall within that provision's restoration exception to the prohibition on firearm possession in 18 U.S.C. § 922(g)(9).

Appellant further avers that his right to possess a firearm is a "civil right" which was taken away upon his domestic assault conviction and is therefore a right that may be restored. We reject this contention. Generally, federal courts have held that the "civil rights" in question under 18 U.S.C. § 921(a)(33)(B)(ii) "are those which most states extend by virtue of citizenship within their borders: (i) the right to vote; (ii) the right to hold elective office; and (iii) the right to sit on a jury." *McGrath, supra*, at 1007 (citation omitted). The United States Court of Appeals for the Fourth Circuit has indicated that "[i]n determining whether a defendant's civil rights have been restored, we look to the whole of state law to determine whether the state has returned to the defendant the rights to vote, to hold public office, and to serve on a jury." *United States v. King*, 119 F.3d 290, 293 (4th Cir. 1997) (internal quotation marks and citations omitted). Accordingly, we hold that the term "civil rights" in 921(a)(33)(B)(ii), which provides several exceptions to the prohibition in 922 U.S.C. § (g)(9) on the right of a person convicted of a misdemeanor crime of domestic violence to possess a firearm, generally refers to the rights to vote, hold elective office, and sit on a jury.

Under West Virginia law, Appellant's misdemeanor conviction of domestic assault did not cause him to lose his civil rights to vote, hold elective office, or sit on a jury.[4] Be-

---

**3.** The court in *Jennings* rejected the reasoning in two cases, *United States v. Indelicato*, 97 F.3d 627 (1st Cir.1996), *cert. denied*, 519 U.S. 1140, 117 S.Ct. 1013, 136 L.Ed.2d 890 (1997), and *United States v. Wegrzyn*, 305 F.3d 593 (6th Cir. 2002), in which courts found that one who never loses his or her civil rights should not be treated differently than one who lost his or her civil rights and had them restored

**4.** Article IV, § 1 of the Constitution of West Virginia and W.Va.Code § 3–1–3 (1986) provide that a person under conviction of treason, felony, or bribery shall not be permitted to vote. According to W.Va. Const., art. IV, § 4, only citizens entitled to vote (*i.e.*, those who, *inter alia*, are not under conviction of treason, felony, or bribery)

shall be elected to any state, county, or municipal office. West Virginia Code § 6–5–5 (1923) specifically indicates that "[n]o person convicted of treason, felony, or bribery in any election ... shall, while such conviction remains unreversed, be elected ... to any office[.]" Finally, W.Va. Code § 52–1–8 (1993) disqualifies a prospective juror from serving on a jury who has lost the right to vote because of a criminal conviction (for treason, felony, or bribery), or has been convicted of perjury, false swearing or other infamous offense. The term "infamous offense" has been interpreted as including felonies. *See* Syllabus Point 6, *State v. Bongalis*, 180 W.Va. 584, 378 S.E.2d 449 (1989) (holding that "[a] felony is an 'infamous crime' as it is punishable by imprisonment in the State penitentiary").

cause Appellant did not lose these civil rights, he cannot have them restored within the meaning of 18 U.S.C. § 921(a)(33)(B)(ii). Consequently, the restoration exception in 18 U.S.C. § 921(a)(33)(B)(ii) is not applicable to Appellant.

■ Appellant next contends that the Legislature did not intend to disqualify domestic assault misdemeanants from ever possessing a firearm. Again, we disagree. West Virginia Code § 61–7–7(c) clearly prohibits the restoration of a disqualified person's ability to possess a firearm "if such possession would ... violate any federal law." "It is a settled principle of statutory construction that courts presume the Legislature drafts and passes statutes with full knowledge of existing law." *In re Sorsby*, 210 W.Va. 708, 714, 559 S.E.2d 45, 51 (2001) (citations omitted). Section 922(g)(9) was added to the Gun Control Act of 1968 in 1996 and, despite the fact that W.Va.Code § 61–7–7 has been amended twice since that time, the Legislature has not seen fit to amend the language of W.Va.Code § 61–7–7(c) which makes the restoration of a disqualified person's right to possess a firearm contingent on such possession not violating any federal law. Further, it is notable that when the Legislature amended W.Va.Code § 61–7–7 in 2000, it added language specifically disqualifying persons convicted of domestic violence from possessing a firearm. Therefore, we believe that the Legislature has indicated its intent that persons convicted of domestic violence should be disqualified from possessing firearms.

■ Finally, Appellant asserts that elements of a misdemeanor crime of domestic violence under the federal statute are not the same as the elements of the crime of domestic assault under our State law. According to 18 U.S.C. § 921(a)(33)(A)(i) and (ii),

(33)(A) Except as provided in subparagraph (C), the term "misdemeanor crime of domestic violence" means an offense that —

(i) is a misdemeanor under Federal or State law; and

(ii) has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by a current or former spouse, parent, or guardian of the victim, by a person with whom the victim shares a child in common, by a person who is cohabiting with or has cohabited with the victim as a spouse, parent, or guardian, or by a person similarly situated to a spouse, parent, or guardian of the victim.

As noted above, Appellant was convicted of domestic assault the elements of which are set forth in W.Va.Code § 61–2–28(b) (2004) as follows:

Any person who unlawfully attempts to commit a violent injury against his or her family or household member or unlawfully commits an act which places his or her family or household member in reasonable apprehension of immediately receiving a violent injury, is guilty of a misdemeanor and, upon conviction thereof, shall be confined in a county or regional jail for not more than six months, or fined not more than one hundred dollars, or both.

"Family or household members" is defined, in relevant part, in W.Va.Code § 48–27–204 (2002), as persons who:

(1) Are or were married to each other;

(2) Are or were living together as spouses;

(3) Are or were sexual or intimate partners;

(4) Are or were dating: Provided, That a casual acquaintance or ordinary fraternization between persons in a business or social context does not establish a dating relationship;

(5) Are or were residing together in the same household;

(6) Have a child in common regardless of whether they have ever married or lived together[.]

Although Appellant's argument on this issue is summary and vague, he apparently contends that the definition of "family or household members" in W.Va.Code § 48–27–204 is broader than the list of domestic relationships in 18 U.S.C. § 921(a)(33)(A)(ii).

Instructive on this issue is the case of *United States v. Belless*, 338 F.3d 1063 (9th Cir.2003). In *Belless*, the defendant pleaded guilty to committing assault and battery on his wife. However, the Wyoming assault and battery statute under which he was charged

did not include as an element that the victim share one of the domestic relationships specified in 18 U.S.C. § 921(a)(33)(A)(ii). It said only that "A person is guilty of battery if he unlawfully touches another in a rude, insolent or angry manner or intentionally, knowingly or recklessly causes bodily injury to another." *Belless,* 338 F.3d at 1065 (footnote omitted). Thus, one who engaged in conduct prohibited by the statute was guilty of the crime whether the victim was a spouse or a perfect stranger. Several years later, the defendant was convicted of violating 18 U.S.C. § 922(g)(9) for possessing a firearm after having been convicted of a misdemeanor crime of domestic violence. The defendant challenged the conviction, *inter alia,* on the issue whether a domestic relationship must be an element of the predicate crime. The court concluded that,

> The federal statute does not require that the misdemeanor statute charge a domestic relationship as an element. It requires only that the misdemeanor have been committed against a person who was in one of the specified domestic relationships. It is uncontested in this case that the victim named in the Wyoming citation, Kristen Belless, was Belless's wife, but he could have been convicted of the crime even had he grabbed a perfect stranger by the arm and angrily shoved him against his car. We find no indication that Congress intended to exclude from the misdemeanors that may trigger 18 U.S.C. § 921(a)(33)(A)(ii) those crimes that are in fact committed against persons who have a domestic relationship specified in the statute, even if the triggering crime does not include such a relationship as an element. Our construction is consistent with the position taken by all seven of our sister circuits to have spoken to the issue.[5]

*Id.,* at 1066.

█ We adopt the reasoning of the *Belless* court and its sister courts and hold that a

violation of 18 U.S.C. § 922(g)(9), which prohibits the possession of a firearm by one who has a prior misdemeanor conviction for domestic violence, does not require that the underlying statute include as an element of the offense a domestic relationship between the victim of the domestic violence and the misdemeanant. It requires only that the misdemeanor was committed against a person who is enumerated in one of the domestic relationships specified in 18 U.S.C. § 921(a)(33)(A)(ii). The question here, then, is whether the person against whom Appellant committed domestic assault was in one of the domestic relationships with Appellant specified in the federal statute.

Included in the record below is the criminal complaint against Appellant[6] which indicates that Kristin Conrad, the victim of Appellant's domestic assault, lived at the same address with Appellant at the time of the events that gave rise to Appellant's domestic assault conviction. Several courts have concluded that a live-in girlfriend qualifies as a domestic relationship under 18 U.S.C. § 921(a)(33)(A)(ii). *See United States v. Shelton,* 325 F.3d 553 (5th Cir.2003), *cert. denied,* 540 U.S. 916, 124 S.Ct. 305, 157 L.Ed.2d 210 (2003) (finding that live-in girlfriend of two months qualified as a domestic relationship under the statute); *United States v. Denis,* 297 F.3d 25 (1st Cir.2002) (affirming conviction under 18 U.S.C. § 922(g)(9) where victim of predicate misdemeanor assault charge was appellant's live-in girlfriend at the time of the offense). At least one court has found that the fact that the victim was the misdemeanant's girlfriend for several years satisfies the "similarly situated requirement" of § 921(a)(33)(A)(ii). *See Eibler v. Dept. of Treasury,* 311 F.Supp.2d 618 (N.D.Ohio 2004). We therefore believe that the record herein contains a sufficient factual basis for finding that the victim and

---

5. *Citing* in a footnote *White v. Dept. of Justice,* 328 F.3d 1361 (Fed.Cir.2003); *United States v. Shelton,* 325 F.3d 553 (5th Cir.2003); *United States v. Kavoukian,* 315 F.3d 139 (2d Cir.2002); *United States v. Barnes,* 295 F.3d 1354 (D.C.Cir. 2002); *United States v. Chavez,* 204 F.3d 1305 (11th Cir.2000); *United States v. Meade,* 175 F.3d 215 (1st Cir.1999); *United States v. Smith,* 171 F.3d 617 (8th Cir.1999).

6. The record designated by Appellant did not include the criminal complaint. However, by motion dated August 5, 2005, Appellee moved to supplement the record with *inter alia,* the three indictments against Appellant, the warrant for arrest, the criminal complaint, and the statement of Judith Thompson. This Court granted Appellee's motion.

Appellant met the domestic relationship requirement of § 921(a)(33)(A)(ii).

In summary, we find that Appellant committed a misdemeanor crime of domestic violence as defined in 18 U.S.C. § 921(a)(33)(A)(ii) and is therefore prohibited from possessing a firearm under 18 U.S.C. § 922(g)(9). Because Appellant's possession of a firearm would violate federal law, the circuit court properly dismissed Appellant's petition to regain the ability to possess a firearm.

## IV.

## CONCLUSION

Accordingly, for the reasons set forth above, we affirm the July 19, 2004, order of the Circuit Court of Ohio County that dismissed Appellant's petition to regain the ability to possess a firearm.

Affirmed.